# CHARLESTOWN.

## HUFFMAN v. ALDERSON'S ADMR.

### October 31, 1876.

1876.
August Term.

1. The provision in the act passed April 7, 1873, (chapter 112 of Acts of 1872–3,) that when plaintiff's right *has been* or shall be, hereafter. obstructed by war, insurrection or rebellion, the time that such obstruction may have continued shall not be computed as any part of the time in which said right might, or ought, to be prosecuted. As also chapter twenty-eight of acts of 1872–3, passed February 6, 1873, which provides that, in computing the time within which any suit shall be brought by persons who cannot truly make the affidavit prescribed by section twenty-seven, of chapter one hundred and six of the Code of West Virginia, known as the suitors test oath, the period, during which the law requiring this oath to be taken was in force, shall be excluded from such computation, though retrospective in their operation, are constitutional when applied to actions on express contracts, though the action was barred by the statute of limitations when those acts severally passed.

2. These acts apply not only to suits brought after their passage, but also suits then pending.

3. A replication based on the act of February 6, 1873, should conclude with a verification, and the defendant may rejoin that he could not truly make such affidavit.

4. If the burden of proof is on the plaintiff on any of the issues, he has a right to open and conclude the case before the jury.

5. The admission by the court, of irrelevant testimony, if it be of such a character as that it could not possibly prejudice the opposite party before the jury, is not good ground for granting a new trial.

6. After a case has been submitted to the jury, the court may permit written evidence, attached to the pleadings, which was inadvertently omitted to be read to the jury, to be read in the argument, and such reading of it is no ground for discharging the jury, and continuing the case, unless it operates as a surprise to the opposite party.

7. To constitute an obstruction under the act of April 6, 1873, it is not necessary that the plaintiff should have been entirely prevented from prosecuting his suit, but it is sufficient if he was, to any serious extent, hindered by war; and it is sufficient that the prosecution of his suit was thus obstructed in the circuit court only.

8. The whole of an instruction should be construed together, and it should be sustained, if when so construed, the law is correctly laid down; and a new trial ought not to be awarded, because in such an instruction, one portion of it, taken by itself, was incorrect if by the whole instruction taken together, the jury could not have been mislead.

9. This Court will not reverse a judgment because the circuit court permitted a replication which was double, to be filed, if the two defences set up in it were both good, and they had been set up in two separate replications.

10. Though some of the pleadings conclude with a verification, and no issues are formally joined on them, though so joined on others, yet, if the record states that the jury were sworn to try the issues joined, and the instructions show that the case was fully tried on its merits, including the defences set up by the pleadings on which issues were not formally joined, and the verdict responds not only to the issues joined, but to the defences set up on which issues were not formally joined, such verdict cures such defects under the statute of Jeofails, it being a case of misjoinder of issue.

*Supersedeas* to a judgment of the circuit court of Greenbrier county, rendered on the twelfth day of June, 1874, in a cause therein pending, in which Joseph A. Huffman was plaintiff, and Wallace Robinson, administrator of John Marcus Alderson, deceased, was defendant.

The facts are set forth in the opinion of the Court.

Hon. Homer A. Holt, Judge of said circuit court, presided at the hearing below.

*Samuel Price* and *J. W. Davis*, for Robinson, plaintiff in error.

*Mathews* and *Mathews* for defendant in error.

78

GREEN, JUDGE:

This was an action of debt brought in the circuit court of Greenbrier county, by Joseph A. Huffman, against Oscar Callison, administrator of J. Marcus Alderson, on a promissory note made by the latter, and bearing date on the fifth day of November, 1861, and becoming due twelve months after date.

The summons commencing this action was issued, and bears teste on the thirtieth day of June, 1869. At a term of the court held on the fifteenth day of October, 1870, by consent of parties, the name of Oscar Callison, as administrator of J. Marcus Alderson, was stricken out, and the name of Wallace Robinson, administrator, was inserted in its stead.

To the declaration in this case, the defendant filed the plea of payment, and four special pleas, as follows: the first, that the consideration of the note sued on was Confederate notes, issued by an illegal association, hostile to the Government of the United States; the second was the plea of the statute of limitations, to wit: that the cause of action, set out in the plaintiff's declaration, accrued more than five years before the commencement of this suit; the third was a plea of usury; and the fourth, that part of the consideration of the note, sued on, was Confederate treasury notes, &c. Objection was made to the filing of the first and fourth pleas; but the objection was overruled, and they were filed. General replications were filed, and issue joined on these pleas; issue was also joined on the third plea. To the second plea plaintiff replied generally, and tendered two special replications, to the filing of which the defendants objected, which objection was sustained by the court as to the first, and overruled as to the second of said replications, which was permitted to be filed; and the defendant rejoined generally, and issue was joined. The first replication, setting out that the statute of limitations was suspended from April 17, 1861, to March 1, 1865, by an act of the legislature

1876.
August Term.

Huffman
v.
Alderson's
Admr.

of West Virginia, passed, &c., was rejected. The second special replication sets out that the statute was suspended in the county of Greenbrier during the whole of the late war, to wit: from the —— day of ——, 186–, to the —— day of ——, 186–, because the legal courts of said county were closed during said period, and was filed. Under this state of pleadings, a trial was had at a term of said court in December, 1871. The jury found for the plaintiff the debt in the declaration mentioned, and judgment was rendered for $571.65; and, thereupon, the defendant moved for a new trial, which motion was overruled. And the defendant excepted, and appealed to this Court.

This Court, for reasons assigned in its opinion, (see *Huffman v. Callison's admrs.* 6 West Va. 301), held, *first*, that the circuit court erred in not sustaining the objection made to the filing of the first and fourth special pleas. *Secondly*, it did not err in rejecting the plaintiff's first special replication to the second special plea, as it does not allege the exact period of the war, or exactly how long the courts were closed; but also for the better reason, that, as this suit was instituted since the passage of the code of West Virginia, that under it, this replication was only good as to actions pending when the code of 1868 took effect. It was, therefore, held, by this Court, the second replication to the second special plea was wholly immaterial, and though issue was joined on it, it should be disregarded. This Court also held, that the verdict and judgment were clearly against the law and evidence, and set them aside, and awarded a new trial, remanding the case to the circuit court of Greenbrier for further proceedings.

From this statement of the case, it appears that, when the case was remanded, the parties were at issue on the plea of payment, and of usury, and of the statute of limitations. The other pleas, as well as the special replications to the statute of limitations, were held bad by this Court.

After the cause was remanded to the circuit court, the plaintiff tendered three special replications to the defendant's plea of the statute of limitations, and asked to file the same; the defendant objected to leave being given to file them and each of them; the court overruled the objections to each of them, and permitted them to be filed; and it was accordingly done, on June 12, 1874. The defendant excepted to this action of the Court, and took time to rejoin or demur to these special replications, but he never did either rejoin or demur to them; but, at the October term, 1874, to wit: on November 2, 1874, he filed two special pleas, to which the plaintiff replied generally, which being thus noted on the record, it proceeds thus: "Thereupon, came a jury, who being empanelled and sworn, the truth to speak upon the issue joined, after hearing the evidence, and the argument of counsel, upon their oaths, do say, we, the jury, find for the plaintiff the debt in the declaration mentioned, viz: principal and interest, at this time, $619.28." The defendant moved the court for a new trial; the court overruled the motion, and rendered judgment for the plaintiff in accordance with the verdict of the jury, and the defendant filed his bill of exceptions. The defendant's special pleas, filed November 2, 1874, were in these words:

"*First.* And for further plea, the defendant saith, that at the time that the note, in the declaration mentioned, was executed, it was understood, and agreed, that said note was to be discharged in Confederate treasury notes, and the said notes were only of the value of a small sum, to wit, the sum of $100. And this he is ready to verify; wherefore, &c.

"*Second.* And for further plea, the defendant saith that the note, in the declaration mentioned, was made in reference to Confederate treasury notes as a currency, which notes were worth but a small sum, to wit, $100. And this he is ready to verify; whereupon, &c."

These pleas differ from the pleas which were pronounced by this Court to present an immaterial issue,

when this cause was formerly before this Court, in this, that those pleas alleged that the consideration of the note was Confederate treasury notes, issued by an illegal association, hostile to the government of the United States, and were plead in bar of the entire action. These pleas, on the contrary, are not plead in bar, but in substance, ask an abatement from the note sued on, because they were payable in a depreciated currency, and if they had been properly drawn, were good pleas. But they are defectively drawn. If these pleas were intended to be drawn to set up the defence allowed by ch. 116 of Acts of 1872–3, they are obviously defective in not alleging that the consideration of the note or contract, was for the sale or purchase of any real or personal property. As this act has reference to no other sort of contract, see *Jarrett,s Admr. v. Ludington et al*, 9 W. V., decided at the present term of this Court. And if the defence was based not on this statute, but on the common law, the pleas were defective, in not alleging that the note was executed in the Confederate states, and also not alleging the value of Confederate notes, when the note became due. See *Jarrett's Admr. v. Ludington et al*, 9 W. Va.

The first and second replication, filed June 12, 1874, were in these words : "*First.* And the said plaintiff, for further replication to the defendant's plea of the statute of limitations, says, he could not truly make the affidavit prescribed by section 27, of chapter 106, of the Code of West Virginia, and that, therefore, the said action was commenced within five years after the cause of action, in said declaration mentioned, accrued, and this, he prays, may be enquired of by the country."

"*Second*, And the said plaintiff, for further replication to the defendants plea of the statute of limitations, says, that his right to prosecute his said action, was obstructed by war, insurrection and rebellion, from the first day of July, 1861, to the first day of July, 1865, and so he says, that his said action was commenced within five years after the said cause of action in the said declaration

mentioned occurred, and this he is ready to verify," &c.
The third special replication contains the allegations
in both the first and second replication. It was double,
and ought therefore to have been rejected by the circuit
court. The second replication offers substantially the
same reply to the defendant's plea of the statute of limi-
tations, which this Court, when this case was formerly
before this Court, declared bad; but since this decision
was rendered, the legislature, by ch. 112 of Acts of
1872–3, p. 286, has, in substance, provided that this
shall be a good replication, whether such right has been
heretofore, or shall be hereafter, obstructed by war, in-
surrection or rebellion. If this act is constitutional,
this replication is now good. So also the validity of the
first special replication on its substantial merits, depends
upon the question, whether the act of the legislature,
passed February 6, 1873, session act of 1872–73, ch. 28,
page 76, is constitutional or unconstitutional. But this
replication is defective in its conclusion. The defend-
ant might rejoin in this replication, that he could not
truly make this affidavit. For though ch. 29, of acts of
1872–73, page 76, does not expressly authorize such re-
joinder, yet the Code of West Virginia, ch. 136, section
10, page 645, does provide that, though the plaintiff can
not make such affidavit, yet his suit should not be dis-
missed unless the defendant can, and does, make such affi-
davit. It is obvious, that the purpose of ch. 29, of acts
of 1872–73, was only to extend the time when the plain-
tiff was obstructed by the provisions in the Code, in
bringing his action. In order to afford the defendant
an opportunity to so reply, the special replication No. 1,
to the plea of the statute of limitations, should have con-
cluded with a verification.

If it had so concluded, the first and second special re-
plications to the plea of the statute of limitations would
have been good. For the acts of 1872–73, as I shall
proceed to show, are constitutional, when applied to such
a case as the present.

1876.
August Term.

Huffman
v.
Alderson's
Admr.

There has been much diversity of opinion, whether a retrospective act of the legislature, extending the time required to bar an action, passed after the time has already elapsed in which the action is barred, is constitutional. On the one hand, it is insisted that, so soon as the time prescribed by a statute of limitations expires, the law, at once, raises an implied contract, on the part of the plaintiff, that he will surrender or release any claim he may have had against the defendant, by reason of the original contract, or by reason of the original cause of action, whatever it may be; that this implied contract comes, at once, under the protection of section 10, Article 1, of the Constitution of the United States, which provides that "no State shall pass any law impairing the obligations of contracts;" that such retrospective law not only impairs, but utterly destroys, the obligation of this implied contract.

Again, it is further insisted, that this right to be so released, becomes at once vested as property, and as such, is protected by section 1 of the fourteenth amendment of the Constitution of the United States, which provides that, "No State shall deprive any person of life, liberty, or property, without due process of law;" that such retrospective law does deprive the defendant of this vested right to be released, and that he cannot be so deprived of this vested right by an act of the legislature, but only by 'due process of law'; that is by a suit based upon the law of the land. And it is further insisted that it is still more obvious that such an act of the legislature would be unconstitutional if applied to an action to recover either personal or real property, as it is well settled, that the lapse of the prescribed time in such cases, not only bars the remedy, but extinguishes the right, and vests a perfect title in the party holding the property adversely; a title so complete, that he could, upon its strength alone, recover the property of any other person who should take possession thereof. *Elam v. Bass' Exor's*, 4 Munf. 301. *Brent v. Chapman*, 5 Cranch 358.

2 Curtis 292. *Shelby v. Grey*, 11 Wheat, 361, 6 Curtis 621 *Leffingwell v. Warren*, 2 Black. 599. That this being the case, such an act of the legislature simply undertakes to transfer the property of one man, who has a perfect title to it, to another, and is obviously unconstitutional.

These views are sustained by many authorities. See *McKinney v. Springer*, 8 Blackf, 506. *Stipp v. Brown*, 2 Carter's Ind., 647 ; *Girdner v. Stephens*, 1 Heisk. 280 ; 2 American R. 700 ; *Yancy v. Yancy*, 5 Heisk. 353 13; American, R. 5 ; *Coleman v. Holmes*, 44 Ala., 124; 4 American R. 121. *Calhoun v. Kellogg*, 41 Ga. 231. Cooley on Constitutional Limitations, 369.

On the other hand, it is insisted that, when a cause of action becomes barred by the statute of limitations, the remedy only of the plaintiff is barred, but his rights are not thereby divested ; that there is no implied contract on the part of the plaintiff, arising, when the time prescribed by the statute of limitation expires, that he will release the defendant from his demand ; that the statute of limitations cannot be regarded as forming any part of the original contract, for, if so, the time of limitation could neither be lengthened nor shortened by an act of the legislature passed even before the statute had become a bar ; but that this can be constitutionally done, all the authorities agree. That the statute of limitations affecting the remedy only, and no one having a vested right to any particular remedy, the legislature may vary the remedy as it pleases, and alter the statute of limitations in relation, not only to future, but to past, contracts, whether the bar of the statute had, or had not, applied. These views are sustained by numerous cases. See *Caperton v. Martin*, 4 W. Va. 138; 6, American R. 270. *Bender v. Crawfo;d*, 33 Texas 745, 7 American R. 270. *DeCordoon v. The City of Galveston*, 4 Texas, 470. *Bradford v. Shine's Adm'r.*, 13 Fla., 393 7 American R., 239.

It seems to me that, in each of these classes of cases, there is much sound reasoning. But that both classes

1876.
August Term.

Huffman
v.
Alderson's
Admr.

having proceeded on unsound premises, have reached conclusions more or less unsound. The first of these classes of cases assume, expressly, or by implication, that, so soon as the time prescribed by a statute of limitations expires, the law, at once, raises an implied contract on the part of the plaintiff, that he will surrender or release any claim he may have had arising out of the original cause of action. That no such implied contract is generally raised, is shown by the fact that in most actions, the plaintiff may recover when the statute of limitations is not plead, though his declaration on its face, as well as the evidence, shows that the cause of action was barred by the statute, when the suit was brought. If this fact alone amounted to a release or surrender of the cause of action, the defence could be made, either by a general demurrer, or by the general issue in most forms of actions. Yet this can not be generally done. Thus in the action of assumpsit, it is well settled that a release of the cause of action may be proven under the general issue of non-assumpsit, yet it is equally well settled that the bar of the statute of limitations cannot be proven under this general issue. The inference is that the bar of the statute of limitations, is not the equivalent of a release of the cause of action by the plaintiff. Much of the reasoning in the first of these classes of cases, is based on the assumption that the bar of the statute of limitations implies, in law, a release by the plaintiff of his cause of action, and the premises being false, the conclusions arrived at are unsound. So, too, the second class of cases assumes that the statute of limitations, as a general rule, does not divest the rights of the plaintiff, but only operates upon the remedy. But this assumption is not well founded, for as this statute of limitations takes from the plaintiff, after a prescribed time, all remedy, it thereby divests him of all right, for there can be, under the law, no right where there is no remedy. It has accordingly been always held, that if a legislature attempts, by statute, to take

away all remedy on a contract, such act is unconstitutional, because it destroys the contract. See *Griffin v. Wilcox*, 21 Ind., 370. *Call v. Hagger*, 8 Mass., 430. The conclusions of this second class of cases based on these false premises, has led to false conclusions.

The true view, as I conceive, is that when the time prescribed by the statute of limitations expires, the plaintiff is by operation of law, and not by contract, divested of all right of action. Can the legislature subsequently confer on the plaintiff, by statute, a right of action which he has not when the statute is passed? Certainly, as a general rule, the legislature can possess no such power. It cannot, generally, confer on any one a right of action which he has not, because, obviously, the party against whom the legislature gives such action, is thereby deprived of his property, and the Constitution of the United States, section 1 of the fourteenth amendment, provides that no one shall be so deprived of his property, but that he shall only be deprived thereof by due process of law.

But, while this is the general rule, there are acknowledged exceptions to it. Thus it has often been held that a legislative act is constitutional, whose object and effect is to give a remedy on an express contract, according to the real intention of the parties, and thus to promote justice, though the act be retroactive, and, when passed, no action could have been brought on such contract, either because of informalities in entering into it, arising out of mistake, or because of personal disability to make such contract, or from some ingredient in the contract forbidden by law at the time it was made; so acts of the legislature have been held constitutional, which take from a party a mere legal right to avoid an express contract into which he has entered, it having been held that, such a mere legal right to avoid an express contract, as the party could not justly insist upon, was not protected by the constitution.

Thus, in the case of *Syracuse City Bank v. Davis*, 16 Barbour, 189. The suit was brought by the plaintiff

against the defendant as the endorser of a note given for money lent by the Syracuse City Bank. It appears that, at the time ·the note was given, the plaintiff, the City Bank of Syracuse, had no legal existence as a corporation, because of certain formal defects or irregularities in the manner of its organization; but, afterwards, the legislature passed an act declaring that it should be regarded as a valid corporation. Though the defendant, before the passage of the act, was not liable to be sued, yet this act was declared constitutional, and the plaintiff recovered in his action. The court say : " No right had vested in the defendant to be absolved from the payment of the money the bank had advanced, and which he had agreed to pay on certain conditions, which had happened. There was only wanting a remedy; and the remedy was wanting solely by reason of certain irregularities and defects in the organization of the bank. These irregularities and defects the legislature had a right to remedy."

So in the case of *Kearney v. Taylor*, 15 Howard, 515, 20 Curtis, 608. The supreme court held that, though it had been expressly decided that a deed made· by a commissioner to one of several purchasers, with the assent of the others was void, yet that a subsequent act of the legislature could make valid such a deed. So, too, marriages that were void, because celebrated by powers not authorised to celebrate marriages, may be afterwards rendered valid by legislative enactments, not only between the parties, but also as to the rights of property affected by such marriage. And such legislative enactment is not void, though in its operation it impairs vested rights. *Goshen v. ·Stonington*, 4 Conn.·210. In *Lewis v. McElvain*, 16 Ohio, 347, it was decided that though money was borrowed from an unauthorized bank, while a statute law expressly declared· the note given therefor void, yet a subsequent act of the legislature was· declared constitutional, which permitted suit to be brought on such notes, and declared that it should be unlawful· for ·the defendants in such suits to ·plead, in defence,· that ·the notes

were void, on account of their being contracts in violation of a statute law of the State. So it has been held, that the legislature may render valid the deeds of married women, which, at the time they were executed were void, because the certificate of the officer taking the acknowledgement did not contain even the substance of what the law, at the time the deed was executed, required the certificate to contain. *Goshorne v. Purcell*, 11 Ohio S. R., 641. The court, in that case, say: "Justice and equity require that she should not take advantage of the mistake; and she has, therefore, no just right to the property. She has no just right to complain, if the law which prescribed forms for her protection, shall interfere to prevent her reliance upon them to resist the demands of justice." The same views have been taken by the Supreme Court of Pennsylvania, who have decided that the act of the legislature of that State of 1826, making valid, deeds which were void from a defective statement of their acknowledgement, was constitutional. *Barnett v. Barnet*, 15 Serg. R. 72; *Tate and wife v. Stootzfoos*, 16 Serg. R. 35. And their opinion have been approved by the Supreme Court of the United States. *Watson v. Mercer*, 8 Peters 88. So checks, void at the time they were given for want of revenue stamps, have been held valid after being stamped under a subsequent act of Congress. *Gibson v. Hibbard*, 13 Mich. 215; *Harris v. Rutledge*, 19 Iowa, 389.

These, and numerous other cases, which might be cited, if they do not go further, at least, establish the principle that where there has been even an attempt to make an express contract, out of which there has arisen a moral obligation, though such attempt to make a legal contract was an entire failure, because the proposed contract was contrary to public policy, or in violation of a then existing statute law, or because of informalities in making the contract, the legislature has a constitutional right to validate such contract subsequently; and, *a fortiori*, of the original contract was binding, both legally and morally,

but has since become invalid, as by a failure to record it properly, under circumstances which leave the moral obligation of the contract in full force, the legislature may, constitutionally, by a healing act, validate such a contract, and give a remedy for its enforcement. And, in all such laws, it makes no difference whether the legislative act, that makes the void contract valid, was passed before or after suit brought, in which the invalidity of the contract was sought to be taken advantage of. The bringing of the suit vests no right to a particular decision; and the case must be determined on the law as it stands when the judgment is rendered. *Bacon v. Callender*, 6 Mass. 309; *Butler v. Palmer*, 3 Hill, 324; *Watson v. Mercer*, 8 Peters, 88.

To apply these principles to the present case. Here the contract was evidently binding, both legally and equitably, but the remedy thereon was lost, partly, at least, by obstructions to, or difficulties in, its enforcement arising out of a war, or out of unjust and unconstitutional legislation, the effect of such war; under such circumstances, the moral obligation to fulfil the contract remains, and, without departing from well established principles, the legislature has provided by law a remedy to enforce such express contract according to the real intention of the parties. The providing such remedy, impairs the obligation of no contract, and the defendant can have no vested right to avoid his express contract bond upon lapse of time under such circumstances. It is true that the legislature in the Acts of 1872–73 under consideration, have gone further, and attempted to give an action, not only where there was an express contract, but even in actions of detinue and ejectment. In this, they may have transcended their constitutional power, for, the legislature has not a constitutional right to confer on a party a right of action, except under particular circumstances, though they may think that it is morally right, that such right of action should be conferred. To

admit such a general right would be to subject the right of the citizen to hold any property to the caprice of the legislature. The citizen would be deprived of his property by legislative action and without due process of law. But if the power of the legislature is restricted in the manner we have indicated, though it might possibly be abused, yet the Constitution of the United States, and of this State, not having restrained the legislature from exercising such power, the court can not pronounce such acts unconstitutional. It is true, that the power to pass retrospective acts is always dangerous, and is always liable to great abuse. Some of the States have, by their constitutions, in view of these abuses, expressly prohibited the legislature from passing any retrospective law. But our State Constitution contains no such prohibition. The exercise of such power is, however, sometimes eminently just and conservative, and unless its exercise either impairs the obligation of contracts, or deprives a party of his life, liberty, or property, without due process of law, our courts cannot pronounce it unconstitutional. It is insisted in argument, that the legislature never intended that these acts of 1872–73 should be retrospective, or at least, that they should be applied to pending suits. It is true, that the proper rule of construction is to give a prospective operation to a statute, unless its terms show clearly, a legislative intent that it should have a retrospective operation. *Dash v. Vankleek*, 7 Johnson, 477. But the terms of both these laws, clearly, show that the legislature intended they should have a retrospective operation. If the Constitution of neither the United States, nor this State, is violated, the legislature has a right to pass a retrospective act applying to a pending suit, for, as we have seen, the bringing of a suit vests no right to a particular decision; and the case must be determined on the law as it stands, when the judgment is rendered. *Bacon v. Callender*, 6 Mass., 309; *Butler v. Palmer*, 1 Hill., 327; *Watson v. Mercer*, 8 Peters, 88; *Muther v. Chapman*, 6 Conn., 54. These

acts being clearly retrospective, I see, on their face, nothing to indicate that it was the purpose of the legislature not to have them applied to pending suits.

During the progress of the trial, various exceptions were taken by the defendant; the first was, that his motion to be allowed to open and conclude the case, was overruled. If we are to regard the case as being tried, not only on the issues formally joined, but also on issues on the special replications of the plaintiff, then it is obvious that the court committed no error in permitting the plaintiff to open and conclude the case, as the burden of establishing the truth of these replications was on the plaintiff. The question whether we should regard the case as tried on their special replications, will be presently considered. The next exception was to certain questions to, and answers of, S. R. Huffman and Joseph A. Huffman; these questions and answers, taken together, tend to show, that, at the time the note sued on was given, and for some time before, the plaintiff had no other money except Virginia Bank notes; if this note was given for money loaned, this evidence would be pertinent to the issues being tried, and if not, it was irrelevant, and should have been excluded; but I can not see what possible prejudice the defendant could have sustained, if the note sued on was not given for money loaned.

The next exception is, that the affidavit of the plaintiff, which was attached to the first special replication that he could not truly make the affidavit prescribed by section twenty-seven of chapter one hundred and six of the Code of West Virginia, and he was prevented from instituting this suit, because he could not make this affidavit, was permitted by the court to be read to the jury, in the argument of the cause by the plaintiff, it not having been submitted as evidence, and when it was so read, though the defendant asked the court to discontinue the trial and continue the cause, the court refused so to do.

The act of 1872–73 expressly makes such affidavit evidence. It was appended to the special replication, and though it was not read to the jury while the evidence was being submitted, it was competent to the court to permit it to be read after the evidence was closed, and such reading of it would not entitle the defendant to have the trial suspended and the cause continued, unless such reading of it took the defendant by surprise, and he was thereby excluded from presenting evidence by way of rebuttal. The record, however, fails to show that he was taken by surprise, or that he had any evidence to rebut this affidavit. This affidavit had been filed more than three months with papers of the suit, and if the defendant wished to rebut it, his witnesses should have been summoned for that purpose; but the record does not show that he had summoned any witnesses for that purpose, or if any had been summoned, that they were not then present. I cannot see that the court erred in refusing to continue the case.

The court after the evidence was closed, granted at the instance of the plaintiff, four instructions; the first was, that if the jury believed, from the evidence, the facts set out in the second replication, then the time during which the obstruction continued, should not be computed as any part of the time within which his suit might, or ought to be, prosecuted. The second instruction was, that it was not necessary to constitute such obstruction, that the plaintiff should have been *entirely prevented* from prosecuting his suit, or that it should have been impossible for him to do so, but it was sufficient if he was to any serious extent, hindered by the war, or if he could not prosecute it with the facility and convenience usual in times of peace. The third instruction was, that to constitute such obstruction, it was sufficient that the plaintiff had been obstructed in prosecuting his action in the *circuit court;* and the fourth instruction was, that if no circuit courts were held in Greenbrier county during the war, though county courts were held, their business being principally

confined to matters of police; if the attorneys were absent, and the county occupied sometimes by one, and sometimes by the other, contending forces; if claims for suit could not be safely lodged in the clerk's office, and military law generally prevailed to the exclusion of the civil law, then the jury were authorized to infer the existence of such obstruction by the war, that is, that such obstruction did not mean an impossibility to institute a suit in any court. These instructions are, I think, substantially correct. The act does not require that the institution of the suit shall be prevented by the war but simply obstructed, that is, interfered with, to a serious extent. The plaintiff had a right to sue, either in the circuit or county courts, and, if obstructed in either of these courts, it is, I think, such obstruction as the statute provides for. The only fault to be found with these instructions, is in the conclusion of the second instruction which, if it stood alone, might well be understood to mean, that a very slight hindrance, by the war, would be sufficient; but it seems to me, the jury could not have so understood this instruction, or been mislead by it, as by the preceding part of the same instruction, they are told that a hindrance to a serious extent, was sufficient to constitute an obstruction within the meaning of the law. The defendant asked an instruction that the lapse of five years barred the action, but the court properly qualified it, by directing the jury to exclude from the computation the times named in the first and second special replications, if the facts, stated in those replications, were proven to their satisfaction. The defendant moved the court for a new trial, because the court had, as before stated, permitted irrelevant testimony to go before the jury, and had erroneously instructed the jury, and asked the court to certify the facts proven, but the evidence being conflicting, the court refused to certify the facts.

From what has been said, so far as this court can see, the court properly refused to grant a new trial. We have seen that no issues were formally made upon the

80

three special replications of the plaintiff to the statute of limitations. Is this error cured by the statute of Jeofails? The first of these replications concludes to the country, but should have, as we have seen, concluded with a verification, and the issues on these special replications, or at least on this one, would not have been made up by simply adding a *similiter*, but a rejoinder should have been filed first by the defendant. This was not done, and the record does not state that issues were joined on these special replications, but simply that the jury were sworn to try the issue joined, there having been several issues formally joined. The verdict would have been a proper response not only to all the issues formally joined, but also to the issues on these special replications, being simply a finding for the plaintiff, the debt in the declaration mentioned. The Virginia cases formerly held, that when there was a special replication containing new matter, there can be no issue thereon without a rejoinder, and that this objection is not obviated by the statement in the record, that the jury were sworn to try the issue, or rendered a verdict on the issues joined; but it was held otherwise in a more recent case of *Moore v. Mauro*, 4 Rand 488, and this decision was approved in *South Side Railroad Co. v. Daniel*, 20 Gratt. 360. In that case, as in this, the record showed no issue made upon the special plea; one had been made upon the general issue, and the jury were sworn to try the issue, but, in their verdict, they state that they find for the plaintiffs on the issues joined. The court held that this was a misjoining of issue, cured by the statute of Jeofails. Our case resembles this in most respects. There, as in this case, no question was raised in the court below, about the impropriety of the jury trying the cause till the issues were formally made up, and it further appeared, as it does in this case, from the instructions given, that the jury really tried the case, as if an issue had been formally made up on the special replication. In that case, this question was first raised and insisted upon in the court of appeals. In the case now before us, this

failure to make up the issues has not even been assigned as an error in this Court, nor has any allusion to it been made by counsel in their argument. It would seem to have entirely escaped attention that issues had not been properly made up. To reverse the case now for such an error, would be to sacrifice justice to a mere technicality, in no way affecting the merits. Basing our action on the two Virginia cases referred to, I think we should regard this as a misjoinder of issue, cured, after verdict, by the statute of Jeofails. The errors committed by the defendant in his two special pleas, which I have before pointed out, of course constitutes no error of which he can complain. The error in the conclusion of the first special replication was one of form, and is cured, after verdict, by the statute of Jeofails. The error in permitting the third special replication to be filed, is one of which the defendant cannot complain in this Court, as he has suffered no injury therefrom; this third replication being only bad because it was but a restatement of the first and second replications which, separately, were good.

There having been no errors committed to the prejudice of the defendant, of which he can complain in this Court, the judgment of the circuit court must be affirmed with costs to the appellee in this Court, and damages according to law.

The other Judges concurred.

JUDGMENT AFFIRMED.