IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT A SPECIAL TERM THEREOF, HELD AT WHEELING,
IN THE COUNTY OF OHIO, COMMENCING ON
THE THIRD DAY OF MARCH, 1880, AND
ENDING ON THE FOURTH
DAY OF MAY, 1880.

---

# Wheeling.

STUART, BUCHANAN & CO. *v.* COUNTY OF GREENBRIER.

Decided March 27, 1880.

Under the statute passed by the Legislature of Virginia, at Richmond, on May 9, 1862, authorizing counties to purchase salt for distribution to their people, the county court of Greenbrier, which was under the control of that government in 1862, made a contract with S. for the purchase of a certain quantity of salt, which was then delivered by S. HELD:

> I. This is a valid contract, binding on the county of Greenbrier as at present organized; and its payment is not prohibited by the constitution of the United States or of this State.

> II. This contract being a parol contract, and suit not having been brought on it till 1875, it was barred by the statute of limitations; and to the plea of the statute of limitations the plaintiff could not reply, that he could not truly make the affidavit prescribed by § 27 of ch. 106 of the Code of West Virginia. as no plaintiff can make such replication, when he sues any corporation.

*1880
Special Term.*

*Stuart,
Buchanan & Co.
v.
County of
Greenbrier.*

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Greenbrier rendered on the 13th day of June, 1876, in an action therein pending, in which the said Stuart, Buchanan & Co. were plaintiffs, and the said county of Greenbrier was defendant, allowed upon the petition of the said plaintiffs.

1880
Special Term.

Stuart.
Buchanan & Co.
v.
County of
Greenbrier.

Hon. H. A. Holt, judge of the eighth judicial circuit rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

On May 9, 1862, the Legislature of Virginia, at Richmond, passed an act authorizing the several county courts of the State, a majority of the justices being present, to purchase for the people of their several counties such quantities of salt as these courts might deem necessary, and to distribute or dispose of the same to the people of their several counties, in such manner and on such terms as they might think proper. A copy of this act will be found in Judge Christian's opinion in the case of *Dinwiddie County* v. *Stuart, Buchanan & Co.*, 28 Gratt. 536, 537. Shortly after the passage of this act the plaintiffs proposed under it to furnish salt to the several counties of the State in the Confederate lines to the extent of twenty pounds to each inhabitant of a county, at the price of $1.00 per bushel. Many counties in the State promptly accepted this proposal. The county of Greenbrier was within the Confederate lines; but it was one of the last counties which acted on the subject. The county court on August 25, 1862, a majority of the justices being present, by virtue of the authority conferred by this act, authorized Jonathan E. Bell to purchase not exceeding fifteen thousand bushels of salt on behalf of the county of the plaintiffs, and authorized him to borrow the money on the faith of the county to pay for the same, and to distribute the same, as equally as might be, among the citizens of the county at the rate of twenty pounds to each inhabitant, and to fix the price of the same so as to cover all expenses and one fourth more on the cost of the salt to cover waste.

When the plaintiffs made this proposal to furnish salt to the several counties at $1.00 per bushel, the market price of salt at Saltville, Virginia, where it was to be delivered, was $2.00 per bushel in Confederate currency; but it rose rapidly in value. But the plaintiffs did not

1880
Special Term.

Stuart,
Buchanan & Co.
v.
County of
Greenbrier.

feel justified in charging more than the proposed price because of this rise; and accordingly, on the 1st day of September, 1872, they entered into a written contract with Bell as the agent of Greenbrier county to furnish to the county of Greenbrier four thousand eight hundred and eighty-four bushels of salt within twelve months, to be delivered in equal monthly instalments at Saltville at the price of $1.00 per bushel, to be paid for in money or bonds of the county bearing interest, as the plaintiffs should elect, the sacks to be furnished by the plaintiffs at their market price when the salt was to be delivered. There was in this contract a stipulation, that under certain circumstances, not necessary to be stated, the plaintiffs were not to be responsible for a failure to deliver all the salt. The contract especially states, that "this salt was for distribution amongst the citizens of said county."

On the 22d day of September this contract was approved by the county court of Greenbrier by an order of the court; and the plaintiffs having elected not to be paid in cash, this order directed Bell, the agent of the county, to issue the bonds of the county for the salt so purchased. Under this agreement one thousand five hundred bushels of salt in five hundred sacks were delivered to the said county. The sacks being charged for at $1.50 per sack, that being the price of sacks in Confederate treasury-notes. This delivery of this salt was made in the latter part of 1862 and early in 1863; and at the time of its delivery at Saltville, Virginia, the market value of salt there was at least $10.00 per bushel. No more salt was delivered, probably because the defendant could not get it transported. On January 1, 1863, in said county, Bell, as agent for the county of Greenbrier, settled with the plaintiffs by giving them the note signed by him as agent for said county, by which the county of Greenbrier promised to pay to the plaintiffs two years after date, $2,250.00 with interest from date, January 1, 1863, to the payment of which the faith of said county was thereby pledged. The amount named in this note

1880
Special Term.

Stuart,
Buchanan & Co.
v.
County of
Greenbrier.

was made up of $1,500.00 for one thousand five hundred bushels of salt at $1.00 per bushel and five hundred sacks at $1.50 per sack, that being their then market-value in Confederate treasury-notes. When this salt was purchased and agreement and note signed, nothing was said about the currency in which said obligation was to be paid, though Confederate currency was the currency of of the county then.

On August 22, 1875, the plaintiffs having been paid nothing by the defendant instituted a suit in the circuit court of Greenbrier on this note and agreement. There were three counts in the declaration. The defendant demurred to the declaration and each count thereof; and the court overruled its demurrer. It is not denied that the second and third counts were good; but it is insisted that the first count is defective, because the note is called a writing obligatory, though it is not said to have been sealed. To the first count the defendant pleaded *non est factum,* and to the other two counts *nil debet*; and the plaintiffs replied generally; and issue was joined. The defendant also pleaded to the whole declaration, that the supposed contracts named were, according to the true understanding and agreement of the parties, to be fulfilled and performed in Confederate treasury-notes, and were entered into in reference to such notes as a standard of value. To this the plaintiffs replied generally, and issue was joined. The defendant also pleaded the statute of limitations to the whole declaration, and also to the second and third counts. The plaintiffs to their pleas replied; first, that they could not, nor could either of them, truly make the affidavit prescribed by section 27 of ch. 106 of the Code of West Virginia, concluding this replication to the country; and secondly, that their right to prosecute their said action was obstructed by war, insurrection and rebellion from July 1, 1861, to July 1, 1865, concluding this replication with a verification; and thirdly, they filed a replication, which asserted both of the facts stated in these two replications, concluding with

1880
Special Term.

Stuart,
Buchanan & Co.
v.
County of
Greenbrier.

a verification. To the filing of these replications the defendant objected, and its objection was overruled, and thereupon it rejoined generally, and issues were joined thereon. Neither party requiring a jury to try these several issues the matters both of law and fact were submitted to the court, who having heard the evidence, decided that the plaintiffs take nothing by their bill, but for their false clamor be in mercy, etc., and that the said defendant go thereof without delay and recover against the plaintiffs its costs by it about its defense in this behalf expended, to which action of the court the plaintiffs took a bill of exceptions, which was signed, sealed and enrolled; and this court has awarded a writ of error and *supersedeas* to said judgment.

The bill of exceptions sets forth all the evidence submitted on the trial of the cause, which consisted of the two orders of the county court of Greenbrier referred to above, the said note and agreement sued on, and the deposition of one of the plaintiffs, W. A. Stuart; and taken together they show the facts proven to be as above stated. An affidavit was filed also with the first replication to the plea of the statute of limitations, whereby W. A. Stuart, one of the plaintiffs, swore that neither he nor any of the other plaintiffs could truly make the affidavit prescribed by § 27, ch 106 of the Code of West Virginia.

*Mathews and Mathews,* for plaintiff in error, cited the following authorities:

Va. Law Journal, Sept. 1877; 6 W. Va. 1; 10 W. Va. 596; *Dinwiddie County* v. *Stuart, Buchanan & Co.* 28 Gratt. 526; *White's Exr.* v. *County of Surrey* (petition for writ of error) Gratt. —; *Terry, assignee,* v. *Board of Supervisors of Pittsylvania County* Gratt. ——; *Stuart, Buchanan & Co.* v. *Dinwiddie County,* Gratt. ——.

*John W. Harris,* for defendant in error, cited the following authorities:

*Dissenting Opinion of Judge Anderson in Dinwiddie*

1880
Special Term

Stuart,
Buchanan & Co
v.
County of
Greenbrier.

*County* v. *Stuart, Buchanan & Co.* 28 Gratt. 526; 7 Wall. 700; 12 Wall. 342; 20 Wall. 655; 21 Am. Rep. 586; 1 Parsons Cont. 139; 9 W. Va. 616; Acts 1870, ch. 33; Acts 1872-3, ch. 114, § 59.

GREEN, PRESIDENT, delivered the opinion of the Court:

There is in this case no necessity to consider or decide the several preliminary questions, which have been raised by the appellant's counsel. If they be all waived and the case be decided on its merits, the judgment of the circuit court must be affirmed; and it is therefore better to dispose of this case on its merits, and end finally the controversy between the parties.

To the plaintiffs' action two defenses are interposed by the defendant. One of them is a denial that the defendant is indebted to the plaintiffs; the other, that the plaintiffs' action is barred by the statute of limitations. The plaintiffs' right to recover is distinctly established by the evidence, if a contract made in 1862 by a county court within the Confederate lines and under the control of the government of Virginia at Richmond is valid and binding on such county as at present organized, where the contract was made under the Virginia statute of May 9, 1862, authorizing counties to purchase salt to be disposed of to the people, and the salt was actually delivered. The Court of Appeals of Virginia has, after a most careful examination of this question reached the conclusion, that such contract is valid and binding on the county as now organized. See *Dinwiddie County* v. *Stuart, Buchanan & Co.*, 28 Grat. 526. It is true that this decision was made by a divided court. Judges Christian, Staples and Burke were of the opinion that such contract was binding; and Judges Anderson and Moncure were of the contrary opinion. Judge Christian delivered the opinion of the majority of the court, and Judge Anderson that of the minority. These opinions are both able and lengthy. They entirely exhaust the

subject; and there is no need to repeat what has been so well said. I have carefully examined these opinions, and I have reached the conclusion, that the views of the majority of the court in that case are sound, and that the county court of Greenbrier as now organized is bound by the contract made by the county of Greenbrier in 1862, and which it is now sued on, unless the right of the plaintiff to recover on this contract is barred by the statute of ·limitations. The contract sued on not being under seal is barred in five years after the cause of action arose, unless the replications filed by the plaintiff remove the bar of the statute.

1880
Special Term.

Stuart,
Buchanan & Co.
v.
County of
Greenbrier.

These replications are in substance, first, that the plaintiffs were obstructed by war, insurrection and rebellion, from July 1, 1861, to July 1, 1865. This is not proven by the evidence; but if proven, could not have availed the plaintiffs, as more than ten years elapsed after July 1, 1865, before the institution of this suit; and as this appeared on the face of the plea, it might have been properly rejected by the court. The other replication is, that the plaintiffs, nor either of them, could make truly the affidavit prescribed by section 27 of ch. 106 of the Code of West Virginia. In cases where this replication is a valid reply to the statute of limitations, it should conclude with a verification, for the reasons assigned in *Huffman* v. *Alderson's adm'r*, 9 W. Va., 622. When this replication can be relied upon by a plaintiff, the defendant may confess and avoid it by rejoining, that he the defendant too could not make truly this affidavit; for unless he could truly make it, he could not, under the 10th section of ch. 136 of the Code of West Virginia, have ever had the plaintiff's suit dismissed. But there is a much more fatal objection to this replication than this formal defect. For if it had properly concluded, it would have still been in this case no sufficient reply to the statute of limitations. It is based on ch. 28 of Acts of 1872–3. It was, decided in *Huffman* v. *Alderson's adm'r*, 9 W. Va. 622, "That the purpose of this act was only to extend the time,

1880
Special Teim.

Stuart,
Buchanan & Co.
v.
County of
Greenbrier.
when the plaintiff was obstructed by the provisions of section 1 ch. 136 of the Code of W. Va. But when the suit, as in this case, is brought against a corporation, the plaintiff, though he could not truthfully take the test-oath prescribed by section 27 of ch. 106 of Code of West Virginia, p. 562, could not have been obstructed.

A careful consideration of this section and of section 10 of ch. 136 of Code of West Virginia, p. 645, leads me to the conclusion, that these provisions of the Code could not operate to prevent a corporation, though it had aided the Confederate government voluntarily, from obtaining a judgment against a party who could take the prescribed test-oath. Nor could they operate to prevent a party, who could not take this test-oath, from obtaining a judgment against a corporation, though it had never rendered any aid to the Confederate government. The last cited act expressly provides, "if the action or suit be prosecuted for the use or benefit of a corporation, no order dismissing the same shall be made." And this Court held in *The Bank of Virginia for the use of Isaacs, Taylor and Williams* v. *Handley et al.,* 14 W. Va. 832, that a replication to the plea of the statute of limitations, that the plaintiffs could not truly make the affidavit prescribed by section 27 of ch. 106 of Code of W. Va., could not avail the plaintiffs, though the suit was brought for the benefit of individuals, the corporation being the nominal plaintiff on the record. If a corporation be the plaintiff in a suit, by the express words of the statute above cited requiring that the plaintiff should take this oath, its suit was non-liable to be dismissed by the defendant, though he could take the test-oath. And even if this express provision had not been made, that a suit brought by a corporation should never be liable to be dismissed under this law, still we must have reached this conclusion; for the act, section 10 of ch. 136 of the Code of W. Va., p. 645, provides that the defendant may require the plaintiff (not any agent of the plaintiff) to take this test-oath on pain of having his suit dismissed.

The words of the statute are : the suit shall be dismissed,
"unless the person, for whose use or benefit the same is
prosecuted, make this affidavit." By the "person for
whose use or benefit the suit is prosecuted" must be
meant the individual person who is the substantial plain-
tiff. It could not mean a corporation, when it was the
substantial plaintiff; for a corporation could not possibly
take this or any other oath. This act in terms requires
this oath to be taken by the substantial plaintiff person-
ally ; and we have only to consider the character of the
oath to see that the statute meant, what it said, that this
oath must be taken by the plaintiff in person, and that
it was not intended, that it might be taken by an agent
of the plaintiff or any other person for him.

This oath is set forth in section 27 of ch. 106 of Code
of West Virginia, p. 562, and is very searching in its
character. The form of the oath shows clearly, that the
framers of it supposed that there would be a strong dis-
position on the part of those, who were required to take
this oath, to prevaricate and evade its true meaning, if
possible, and hence it is made very detailed and specific, to
avoid such evasion. It is obvious, that if an agent or
third party was permitted to take this oath according to
his knowledge and belief, the searching character of the
oath would be of very little avail to avoid evasion. How
difficult, for example, would it be to convict any third
person of perjury, if he swore that "the plaintiff never
voluntarily gave aid or comfort to persons engaged
in hostility against the United States."

It is true that the 10th section of ch. 136 of the Code
of West Virginia p. 645, does not in express terms pro-
vide that a suit shall not by means of it be ever dismiss-
ed, when brought against a corporation, as it does provide,
when the suit is brought by a corporation. But it seems
to me obvious, that this section was not intended in any
manner to affect any suit brought against a corporation,
though brought by a party who could not take the test-
oath. This is not only indicated by the language used

1880
Special Term.

Stuart,
Buchanan & Co.
v.
County of
Greenbrier.

in this section, but the same reasons which induced the Legislature to except from the operation of this law cases in which a corporation was plaintiff, must also operate to exempt from its operation cases in which a corporation is defendant. By this section, before a suit could be dismissed, not only the plaintiff (not his agent) but also the defendant (not his agent) was required to take this test-oath. The language of the statute is: "But such order of dismissal shall not be made until after the defendant or defendants shall have made and filed the same affidavit as those required of the plaintiffs." This affidavit was designed to be made by the defendant personally. The reasons for requiring this affidavit to be made by the plaintiff are precisely the same as those which required the defendant to take it personally; and I can not doubt, that this law intended to require him to take this test-oath personally, before the suit should be dismissed. Where the law intended that the defendant might take an oath, or that his agent might take it for him, it was careful to say so in express terms. Thus when the defendant wished to require the plaintiff to take this test-oath, the statute in the beginning of this section provides that "the defendant, or one of the defendants, his agent or attorney, may make oath that he has good cause to believe, and does believe, that the person, for whose use the suit is brought, has aided or abetted the so called Confederate States," &c. But when the defendant, before the suit is dismissed, is called on to take this test-oath, the language used is entirely different, and the statute says this test-oath must be made by the defendant (not by his agent or attorney). This, it seems to me, shows clearly that before any suit could be dismissed under the provisions of this law, this test-oath must have been taken by the defendant personally; and as no corporation can take an oath personally, no suit brought against a corporation could have been dismissed under this law, even if the plaintiff could not take this test-oath.

This conclusion is strengthened by the provisions of

1880
Special Term.

Stuart,
Buchaaan & Co.
v.
County of
Greenbrier.

ch. 106 of Code of W. Va., p. 561. Section 26 of this chapter provides, that a defendant, against whom on publication a judgment has been rendered in an attachment suit, may petition to have this judgment set aside and the case re-heard in a certain time ; and section 27 provides, that when this petition is filed by an individual, it must be accompanied by this test-oath, but when filed by a corporation, it need not be accompanied by such test-oath. So, it would seem, that these laws were not intended to be applicable to any case, in which a corporation was a party either as plaintiff or defendant. This was probably induced in part by the character of the test-oath itself, there being in it statements, which it would be strange to require a corporation to make, such for instance as that it "never sought, accepted or attempted to exercise the functions of any office or appointment whatever, civil or military, under any authority or pretended authority, hostile to the United States;" in part by the apparent necessity of requiring both the plaintiff and defendant personally to take this test-oath, where the law was to be applied; and partly because throughout this law the parties intended to be affected by this test-oath law are the substantial parties in interest in the controversy, and not the nominal plaintiff or defendant; and in a suit by or against a corporation the substantial parties in interest in the controversy are the stockholders and not the directors, or if a municipal corporation be the party, then the inhabitants of the municipality, and not the officials ; and these real parties in interest, the stockholders or inhabitants, as the case may be, might some or even a majority of them differ from the directors or officials in their sympathies and conduct to the United States government, and then to apply these test-oath laws to a corporation plaintiff might operate to punish really stockholders or inhabitants, who had ever been true and lawful subjects of the State of West Virginia; and to apply these laws to the case, where a corporation was defendant, might operate to protect from

1880
Special Term.

Stuart
Buchanan & Co.
v.
County of
Greenbrier.

some suits the representatives of so-called rebel stock-holders or so-called rebel inhabitants.

A large majority of the people of Greenbrier county may have aided, as doubtless many of them did, the Confederate States, and if these provisions in the Code could be applied to a corporation, such as the county court of Greenbrier, the effect would be to protect from this suit these so-called rebel inhabitants of Greenbrier, which certainly was not the purpose of these laws.

My conclusion therefore is, that these test-oath laws in the Code of West Virginia have no application, when the plaintiff or defendant is a corporation ; and that these laws never threw any impediment in the way of the prosecution of a suit, in which a corporation was either the plaintiff or defendant; and therefore in a suit against a corporation a replication to the plea of the statute of limitations, that the plaintiff could not take the test oath prescribed by the Code, is not a good replication under chapter 28 of the Acts of 1872–3, according to the principles laid down in *Huffman* v. *Alderson's adm'r* 9 W. Va. 622, and in *The Bank of Virginia for use, &c.* v. *Handley*, 14 W. Va. 831. In this latter case the same replications to the plea of the statute of limitations, that are filed in this case, were offered to be filed, and this court decided that they were properly rejected. The reasons assigned in that case for the rejection of two of them are equally applicable to this case ; and the other replication, that the plaintiff could not truthfully take the test-oath, should have been rejected for the reasons above given. The failure of the court however to reject them, was an error not prejudicial to the appellant, and of course furnishes no reason for reversing the court below. The evidence clearly established that the cause of action in this case had been long barred when this suit was instituted, and as no replications were filed which could remove this bar of the statute of limitations, the court properly rendered a judgment for the defendant.

The judgment of the circuit court of June 13, 1876,

must therefore be affirmed; and the defendant in error must recover of the plaintiffs in error its costs about this suit in thisCourt expended, and thirty dollar damages.

1880
Special Term.

Stuart,
Buchanan & Co.
v.
County of
Greenbrier.

JUDGES JOHNSON AND MOORE CONCURRED.

HAYMOND, JUDGE, dissented from so much of the opinion and syllabus as holds that the contract was valid.

JUDGMENT AFFIRMED.