Staples, J.,
delivered the opinion of the court.
The appellants moved the circuit court of Scott county, at the March term 1874, to reverse an interlocutory decree by default of the same court rendered •on the 17th May, 1860. It appears that the notice upon which the motion was founded was served the 19th Kovember, 1873. If the date of serving the notice be adopted as the true time, rather than the date ■of making the motion, and if the period provided for üy the seventh section of the act of March 3d, 1866, *650 known as the stay law, be excluded from the eompu-tation, still the motion was not made in five years-from the date of the decree of the 17th May, I860. It was upon this ground the learned judge of the circuit court refused to entertain the motion, and not because in his opinion the decree of 1860 is correct.
The appeal in this case brings in review the correctness of that decisión. The motion, it is insisted, was made under the fifth section of chapter 181, Code of' 1860; and the question is as to the true interpretation of that section and the oue immediately following. It is there provided, that the court in which there is a judgment by default, or a decree on a bill taken for confessed, or a judge of said court in vacation thereof, may on motion reverse such judgment or decree for any error for which an appellate court might reverse it, if the following section (which is the sixth) was not enacted, and give such judgment as ought to be given. It is further provided that every motion under that, chapter (181) shall be after reasonable notice to the opposite party, his agent or attorney in fact or at law, and shall be within five years from the date of the judgment or decree.
The sixth section provides that no appeal, writ of' error or supersedeas shall be allowed by an appellate-court, or judge, for. any matter for which a judgment or decree is liable to be reversed or amended, on motion, as aforesaid, by the court which rendered it, or the judge thereof in vacation, until such motion be overruled in whole or in part.
There is no difficulty in regard to the proper construction of these two sections, as applied to final decrees by default. Under former laws, the limitation upon the right of appeal was five years. The same limitation was by analogy prescribed for motions *651 under the fifth section just cited. The object of that section, as stated by Judge Allen, in Davis, sheriff, v. Commonwealth, 16 Gratt. 134, 137, was to save parties ■ the delay and costs of an appeal to correct irregularities and formal errors, which seldom affect the merits of the controversy, and which would have been corrected at once by the court if pointed out. See also Hill et als. v. Bowyer et als, 18 Gratt. 364. As the party aggrieved could after the lapse of five years take no appeal from a final decree, it was proper to apply the same limitation in case of a motion which in such case is made a substitute for an appeal. All this is plain enough. The real difficulty is in respect to interlocutory decrees; as to which there is not and never was any limitation. An appeal may be taken from such a decree at any time, so long as the cause is pending in court. And whilst a bill of review to a final decree cannot be brought after three years, a petition to rehear an interlocutory decree is not limited by any statutory bar. Cases may be found in which the court has reheard a cause at the distance of eighteen years from the time the decree complained of was pronounced. In another case the court has refused to discharge an order for a rehearing, though at a distance of twenty-five years. Newland Chy., page 188. See also Cocke’s adm’r v. Gilpin, 1 Rob. R. 20. Whether a rehearing shall be granted is said always to depend upon the sound discretion of the-court upon all the circumstances of the case. Adams. Eq., marg. 379: Land v. Wickham, 1 Paige R. 256.
I think it was not the design of the legislature, in enacting the sections already quoted, to abolish these long established rules of practice and proceeding in courts of equity; but to afford an additional remedy by motion in certain classes of cases to reverse or amend. *652 a decree interlocutory or final. If the party aggrieved resorts to the motion allowed by the statute, he must commence his proceeding in five years from the date of the decree.
A motion is, necessarily to a great extent, a-proceeding of an informal character. It is an application ore terns addressed to the court by counsel. Under the statute it may be made even in vacation and upon notice to an agent 'or attorney. In many cases it is insufficient to bring before the court all the equities and matter proper to be understood by the court, and which may have arisen after the lapse of years. It was proper, therefore, to provide some limitation to such motions, even where the decree is purely interlocutory, and that limitation is fixed at five years.
But the remedy by motion, thus afforded by the fifth section, is not exclusive but cumulative. The party aggrieved may, if he pleases, still resort to his petition for a rehearing, even within the five years, for a petition is in effect a motion, and answers all the purposes of the latter under the statute. But if more than five years have elapsed since the date of the decree, the party is deprived of his statutory motion; but his remedy by a petition for a rehearing still remains. And there may be cases in which he might even still resort to his motion, according to the course of proceeding in the courts of chancery. Every one familiar with the practice in these courts is aware that both in England and Virginia errors in decrees are often corrected upon motion, especially where the decree is by default. Indeed there does not appear any very distinct line of demarcation between the cases in which applications of an interlocutory nature should be made by motion, and those in which they should be made by petition, the practice in this respect *653 being generally regulated by the circumstances of each case. 3 Daniel’s Ch. Prac. 244; Newland’s Ch’y, 185, 186; Moore v. Hylton, 12 Leigh 1, 26.
These rules of practice were not intended to be interfered with by the statute; the only alteration being, that when the decree is by default, the party aggrieved must proceed by motion, or by a petition for a rehearing, which is in effect a motion, before an appeal can be taken to this court.
Any other construction would involve incongruities in the practice never contemplated by the legislature. If the statute has abolished petitions for rehearing after five years, the effect will necessarily be, that no appeal can be taken from the interlocutory decree by default after that time. And yet the party aggrieved in such case has only to wait until there is a final decree, and then take his appeal, which necessarily brings in review all the proceedings, including the interlocutory decree. Where any such a decree adjudicates the principles of a cause, or directs the payment of money, or the title or possession of property to be changed, the policy is to allow an appeal without waiting for a final decree. If the defendant in such a ease may wait until there is a final decree, and then take his appeal, no matter what may be the time elapsed between the-interlocutory and final decree, why should he not be allowed to appeal from the interlocutory decree at any time before a final decree; and if he may appeal, why may he not petition for a rehearing, when the justice of the case requires it, whatever may have been the lapse of time, if in fact no' final decree has been rendered. The policy of the law is to encourage petitions for a rehearing as cheaper and more expeditious than the expensive remedy by appeal; and the courts ought to give to the statute such an in *654 terpretation as will preserve this mode of proceeding according to the long established course of the courts, ■ rather than to compel parties to await a final decree, and then incur the expense of appeals, or to lie down under interlocutory decrees grossly unjust and illegal.
My opinion, therefore, is, that the circuit judge did not err in holding that a motion under the statute is barred after five years, whatever may be the character of the decree. But while concurring with him in this view, I think there was no good reason for not treating the motion in this case as substantially a petition for a rehearing. The notice upon which that motion was founded was signed by counsel, it was served upon all the parties claiming under the decree of May 17th, 1860, and was regularly filed in the circuit court. It accurately describes the suit in which that decree was rendered; and it specifies with sufficient minuteness all the grounds upon which appellants rely for reversing the decree. It contains, therefore, every feature necessary to constitute a petition for a rehearing; and if it had been so called, there would be no difficulty in so considering it. Why, then, may it not be treated as a petition ? In Virginia the practice of courts of equity is marked by the greatest liberality with respect to the pleadings. Sometimes a petition for a rehearing is treated as a bill of review, and vice versa. In Laidley v. Merrifield, 7 Leigh 846, it was declared that an application of a party is not to be rejected altogether because he has given it the form and name of a bill of review, instead of a petition or a supplemental bill in the nature of a bill of review. Judge Cabell said, the court should regard its substance, and treat it accordingly as a petition or a ■supplemental bill in the nature of a bill of review. In Mettert’s adm’r v. Hagan, 18 Gratt. 231, an answer *655 was held sufficient for all the purposes of a cross bill. ■See also- Sands v. Lynham, escheator, 27 Gratt. 291. These cases show the disposition of the courts of ■equity to regard substance rather than mere form, and so to mould the pleadings as to attain the real justice of the case.
I think, therefore, the notice in this case was substantially a petition to rehear and set aside the decree of May 17th, 1860, and ought to have been so treated by the court. The parties being before the court, the grounds for the reversal being distinctly set fprth, the court ought to have given the defendants in the motion an opportunity of answering, if they desired, and then to have gone on and decided the question raised •as upon a petition for a rehearing.
It only remains to inquire whether there is any error in the decree of May 17th, 1860, for which it is liable to be reversed. I think there is. The court plainly erred in decreeing a sale of the land before taking an account of the liens thereon, and settling the priorities of the different creditors. The necessity of such an account has been repeatedly affirmed by this court. Moran v. Brent, 25 Gratt. 104; Simmons v. Lyles, 27 Gratt. 922. But this is not all. A part of the judgment creditors, Hubbard, Gardner & Carlton, and Smith and Boberts, were permitted to come in by petition and make themselves defendants, and on the very same day a decree was entered in their favor for the sale of the land. The defendant, George H. Kendrick, ought to have been afforded an opportunity of showing any payments made, or set-offs, to which he may have been entitled as against those creditors. To that end the court ought to have referred the matter to one of its commissioners, to summon the parties, and inquire and report the amount of indebtedness properly chargeable on the land.
*656 The decree of May 17th, 1860, is erroneous in another respect. It appears that the appellant, George-H. Kendrick, on the 12th August 1867, executed a deed of trust for the benefit of H.¡ ff. Kendrick and William Nash, his sureties, upon a bond due Kent, Paine & Kent. The bill avers that this debt had been paid and the deed discharged; but there is no proof of the fact in the record. Kent, Paine & Kent, although not expressly provided for in the deed, were, upon familiar principles of equity, entitled to the benefit of the security, and they ought to have been made parties before any decree for the sale of the land.
These errors, if promptly insisted on, it is very clear were sufficient to vacate the decree of 1860. But since that time new rights may have accrued, other equities may have attached, which would render it impossible to interfere with the sale of the land without much inconvenience and injustice to parties, and even to third persons. The errors alluded to are not fundamental, but such as may have been cured or effectually waived. It may be that Kent, Paine & Kent have been paid their debt, so that they are no longer interested in the subject matter of controversy. It is not improbable, certainly not impossible, that all the creditors may have been before the court, or their claims have been satisfied, or that the land, if sold at all, was sold at its full value. The record furnishes no-information upon these points, and it would be improper for this court to pass upon them finally without giving the parties an opportunity of being heard upon them, or upon any others, bearing upon the decree of 1860, and the sale thereunder. The case must therefore be remanded to the circuit court for further proceedings in conformity with the views herein expressed, and a decree to be entered accordingly.
Decree reversed.