# WHEELING.

## HALL v. WEBB.

Submitted June 20, 1882—Decided March 31, 1883.

(*WOODS, JUDGE, Absent.)

1. The statute of limitations does not commence to run in favor of an occupant of land, while the title thereto is vested in the State. But the statute does commence to run in favor of such occupant against the grantee of the State from the date of the grant of the land so occupied. (p. 322 )

2. Where land had been granted by the State, and an adversary possession had commenced to run against the true owner, and subsequently such land became forfeited to the State under the delinquent land laws, such possession would not be adversary to the State or her grantee after the forfeiture, except from the time the land was re-granted or sold by the State. (p. 322.)

3. The act of the Legislature of this State, passed February 6, 1873, in so far as it attempts, *in actions for the recovery* of land, to exclude from the time fixed as the bar in such actions by the statute of limitations, the period from the 28th day of February, 1865, to the date of the passage of said act, is unconstitutional and inoperative as to actions which had become barred before the passage of said act. (p. 323.)

\*Case submitted before Judge W. took his seat upon the bench.

Writ of error to a judgment of the circuit court of the county of Wood, rendered on the 18th day of April, 1879, in an action of ejectment in said court then pending, wherein Cyrus Hall was plaintiff, and Sylvester D. Webb was defendant, allowed upon the petition of said Hall.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the judgment complained of.

The facts of the case are stated in the opinion of the Court.

*Cyrus Hall* for plaintiff in error cited the following authorities: 9 W. Va. 616; Code ch. 106 § 27; 4 W. Va. 138; 2 W. Va. 575; Cool. Con. Lim. 310; Aug. Lim. (5th Ed.) 3, 4, 5, 58–61.

*R. S. Blair* for defendant in error cited the following authorities: 9 W. Va. 629; 6 W. Va. 513; 12 Leigh 534; Cool. Const. Lim. 364.

SNYDER, JUDGE, announced the opinion of the Court.

Action of ejectment for five hundred acres of land on Goose creek in Ritchie county brought by Cyrus Hall, on the 29th day of July, 1874, against Sylvester D. Webb in the circuit court of Ritchie county and afterwards removed to the circuit court of Wood county where it was tried before a jury. After all the evidence had been heard the plaintiff demurred thereto in which demurrer the defendant joined and the jury found a verdict subject to the judgment of the court upon said demurrer to the evidence. On the 18th day of April, 1879, the court gave judgment for the defendant upon said demurrer, and from that judgment the plaintiff obtained a writ of error to this Court. The only error assigned here is, that the circuit court erred in rendering judgment for the defendant on the demurrer to the evidence, and that it should have given judgment for the plaintiff.

The evidence, as disclosed by the record here, is, in substance, as follows: The plaintiff and one Smith C. Hall by virtue of survey made for them, on the 26th day of August, 1856, obtained from the commonwealth of Virginia a grant, dated November 23, 1860, for three thousand seven hun-

dred acres of land lying on Goose creek a branch of Hughes river in Ritchie county which includes the five hundred acres of land in the plaintiff's declaration mentioned, and before the commencement of this action the said Smith C. Hall had conveyed his interest in said five hundred acres to the plaintiff. This constitutes the plaintiff's evidence of title to the land in controversy.

The defendant proved, that a grant for five thousand acres of land was issued, on the 9th day of January, 1786, by the commonwealth of Virginia to one John Hart, which grant it was admitted covered the land in dispute; that a deed dated October 6, 1843, was executed by the clerk of the county court of Wood county to Josias M. Steed for two thousand three hundred acres of land on Goose creek in Wood county, which deed recites that said land, for the year 1838, had been assessed with taxes in the name of Jacob Moore, returned delinquent for the non-payment thereof and sold therefor in 1840, and purchased by said Steed; that by written contract, dated July 3, 1850, J. M. Steed sold and bound himself to convey to Levi Nutter a tract of five hundred acres of land on Goose creek in Ritchie county which is the land in controversy; that said Levi Nutter having died his son William Nutter by like contract, dated December 2, 1851, sold and agreed to have conveyed to the defendant, Webb, the said five hundred acres of land; that the defendant testified that he took possession of said five hundred acres under and about the date of his said purchase in December, 1851, claiming the same as his own, and that he lived on and occupied it continuously from that time up to the time he was testifying on the trial of this action, and that some time in the summer of 1860 he met the plaintiff and asked him if he had any claim on said land of defendant, and he replied that he had not, that defendant had paid for it and he wanted him to have it; that he has frequently seen plaintiff before and after that time and plaintiff never set up any claim to said land until the institution of this action; that the three thousand seven hundred acres of land in the grant to plaintiff and Smith C. Hall is embraced in the grant for five thousand acres to John Hart and said land was prior to the formation of Ritchie situated in Wood county.

The plaintiff to rebut the evidence of defendant read to the jury a certificate from the auditor of Virginia which certifies that from the year 1805 to the year 1844 inclusive no tract of five thousand acres of land was entered on the books of the commissioner of the revenue for Wood county in the name of John Hart, &c.; and he also read his affidavit that he could not truly make the affidavit prescribed by section 27 of chapter 106 of the Code of this State.

It nowhere appears in the record, either by parol evidence or the description in the writings themselves, that the two thousand three hundred acres of land mentioned in the tax deed from the clerk of the county court of Wood county to Josias M. Steed is any part of the five thousand acres of land granted to John Hart, that any conveyance had ever been made by said Hart to Jacob Moore, or that the five hundred acres described in the contracts from J. M. Steed to Levi Nutter and from Wm. Nutter to defendant is any part of said two thousand three hundred acres.

This being all the evidence, did the court err in rendering judgment for the defendant on the demurrer thereto by the plaintiff?

The law is well settled in this State that upon a demurrer to evidence, the demurrant must be treated as allowing full credit to all the evidence of the demurree, and admitting all the facts directly proved by it, or that a jury might infer therefrom, and as waiving all the parol evidence on his part which contradicts that of the demurree, or the credit of which is impeached, and all inferences from his own evidence which do not necessarily flow from it, and if, thus considering the evidence, the court is satisfied that the preponderance is in favor of the demurrant he will be entitled to judgment upon his demurrer, otherwise the judgment must be in favor of the demurree. *Allen* v. *Bartlett*, 20 W. Va. 46.

Applying this rule to the evidence in the case before us, it clearly appears that the defendant was in the actual, open and continuous possession of the land in controversy from December, 1851, to the time of bringing this action on the 29th day of July, 1874—a period of over twenty-two years—claiming said land as his own adversely to the plaintiff under

a color of title. Thus assuming that the plaintiff had a valid title to the land—he proving no actual possession of any part of his land—his title became barred by the actual, open, continuous adverse possession of the defendant for a period of more than ten years, the statutory bar, unless the plaintiff can bring himself within some exception to the statute of limitations. This it is argued he has done, by insisting, *first*, that until he obtained his grant from the commonwealth, the statute did not operate in favor of the defendant, and *second*, .by showing that he could not make the affidavit prescribed by section 27 of chapter 106 of the Code, and claiming by reason thereof that under chapter 28 of the Acts of 1872–3, the period from February 28, 1865, to February 6, 1873, must be excluded from the ten years prescribed as the statutory bar. If the plaintiff is entitled to have both these periods excluded from the ten years prescribed as the limitation in ejectment, then, the adverse possession of the defendant did not bar his right of entry at the time this action was brought and the judgment should have been in his favor, otherwise the judgment was properly rendered for the defendant.

It is a universal principle of law that time does not run against the State unless so declared in the statute which prescribes the limitation; and as our statute does not, in terms, or otherwise, refer to the State, there could be no adversary possession by the defendant while the title to the land remained in the State. *Shanks* v. *Lancaster*, 5 Gratt. 110; *Korner* v. *Rankin*, 11 *Id.* 420. And where land had been granted and an adversary possession had commenced to run against the true owner, if, subsequently, the land had become forfeited to the State under the delinquent land laws, such possession would not be adversary after the forfeiture nor until the land was regranted or sold by the State, against the State, or her grantee under title derived from such sale or grant. *Lavasser* v. *Washburn*, 11 Gratt. 572. But the statute does begin to run in favor of one in possession of ungranted lands of the State as soon as a grant issues to any one for such lands. *Adams* v. *Alkire*, 20 W. Va. 480; *Shanks* v. *Lancaster*, 5 Gratt. 110.

In the case at bar the defendant showed that the land in controversy had been granted to John Hart in 1786; but as

it was omitted from the commissioner's books from 1805 to 1844, it was forfeited and the title re-vested in the commonwealth, on the 1st day of November, 1836, under the Acts of the General Assembly of Virginia of February 27, 1835, and March 23, 1836. *Staats* v. *Board*, 10 Gratt. 400. The title, therefore, being in the commonwealth from the time of the forfeiture, the statute of limitations did not commence to run in favor of the defendant until the 23d day of November, 1860, the date of the grant to the plaintiff. But as the time between the said 23d day of November, 1860, and the date at which this action was instituted is more than ten years, the plaintiff's right of entry was still barred unless he can also exclude the time between the 28th day of February, 1865, and the 6th day of February, 1873, as provided by the act of February 6, 1873—chap. 28 of Acts 1872-3, p. 76. Is the plaintiff entitled to have said period excluded?

It is manifest that the language of said act of February 6, 1873, embraces all kinds of suits, including the action of ejectment; and consequently, if it is valid and binding upon the courts of this State, the said period therein mentioned must be excluded. *Huffman* v. *Alderson*, 9 W. Va. 616. The plaintiff obtained his grant from the commonwealth on the 23d day of November, 1860. At that time the defendant was in the actual and open possession of the land now in controversy and the plaintiff could then have instituted his action to recover it. The cause of action having arisen at that time, the plaintiff under the laws of this State had ten years within which to bring his action, thus giving him until the 23d day of November, 1870, and if he failed to bring his action within that time the law declared his right to recover the land absolutely barred. More than two years after his right to recover said land had become thus absolutely barred, the Legislature passed the said act of February 6, 1873, by which it is declared "That in computing the time within which *any civil suit*, motion to recover money, proceeding, &c. * * * by persons who could not truly make the affidavit prescribed by section 27 of chapter 106 of the Code, the period from the 28th of February, 1865, to the passage of this act (February 6, 1873), shall be excluded from such computation." The question now presented is, is said act,

when invoked in an action of ejectment for the recovery of land in a case in which such action had become barred by the laws then in force more than two years before said act was passed, a constitutional and valid statute?

In *Huffman* v. *Alderson*, 9 W. Va. 616, this Court held that said act, "when applied to actions on *express contracts*," is constitutional. In commenting upon said act, the Court, in its opinion in that case, says: "It is true that the Legislature, in the act under consideration, have gone further, and attempted to give an action not only where there was an express contract, but even in actions of detinue and *ejectment*. In this they may have transcended their constitutional power, for the Legislature has not a constitutional right to confer on a party a right of action, except under particular circumstances, though they may think it is morally right that such right of action should be conferred. To admit such a general right would be to subject the right of the citizen, to hold any property, to the caprice of the Legislature. The citizen would be deprived of his property by legislative action and without due process of law." 9 W. Va. 629-30. This decision was affirmed in *Keller* v. *McHuffman*, 15 W. Va. 64.

The case at bar may be readily distinguished from *Huffman* v. *Alderson*, just referred to. In fact, the distinction is fairly drawn in the quotation we have taken from that case. That was an action of debt—an action on an express contract —this is an action of trespass—an action of ejectment to recover the possession of land. The effect of the statuatory bar in the two classes of actions is according to the uniform decisions of the courts essentially different. When an action on an express contract becomes barred by the statute of limitations the remedy only is regarded as taken away and the right still remains, and a number of decisions have declared that, under the peculiar circumstances of the cases, where good morals and justice require it, the Legislature may revive the remedy even after it has become completely barred by the statute. *Caperton* v. *Martin*, 4 W. Va. 138; *Wyatt* v. *Morris*, 2 *Id.* 575; *Bender* v. *Crawford*, 33 Tex. 745; *Bradford* v. *Shine*, 13 Fla. 393.

But where the action is to recover the possession of either real or personal property, and especially in cases of eject-

ment and detinue, the rule is very different. In such cases it is settled that, when the statutory bar attaches, not only the remedy for the recovery of the property is gone, but that the absolute title thereto is at once transferred to and thereby vested in the possessor of the property.

"When the period prescribed by statute has once run, so as to cut off the remedy one might have had for the recovery of *property* in the possession of another, the title to the property, irrespective of the original right, is regarded in law as vested in the possessor, who is entitled to the same protection in respect to it which the owner is entitled to in other cases. A subsequent repeal of the limitation law could not be given a retrospective effect, so as to disturb this title. It is vested as completely and perfectly, and is as safe from legislative interference as it would have been if it had been perfected in the owner by grant, or any species of assurance." Cooly's Const. Lim. 365 and cases cited; Ang. on Lim. § 380; *Newby* v. *Blakey*, 3 H. & M. 57; *Elam* v. *Bass*, 4 Munf. 301; *Pate* v. *Baker*, 8 Leigh 80; *Brent* v. *Chapman*, 5 Cranch 358; *Shelby* v. *Gray*, 11 Wheat. 361; *Leffingwell* v. *Warren*, 2 Black 599.

The said act of February 6, 1873, having been passed, as we have seen, more than two years after the title to the land sought to be recovered in this action had become vested in the defendant, under the principles of law above laid down, it must be declared inoperative in this action. To hold otherwise would be to admit that the Legislature, by a simple statute, could transfer the property of one person, who has a complete and perfect title thereto, to another. Such a power is not only clearly repugnant to natural right and justice, but is in direct violation of the bill of rights of this State, which declares that, "No person shall be deprived of life, liberty or property, without due process of law, and the judgment of his peers"—Const. of W. Va., art. 3, sec. 10.

"By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property and immunities, under the protection of the general rules which govern society. Everything which may pass

under the form of an enactment is not therefore to be considered the law of the land." *Dartmouth College* v. *Woodward,* 4 Wheat. 519.

Legislation which attempts to transfer the property of one person to another, is not only contrary to the bill of rights, but it is not legislative in its character and is therefore prohibited by the fifth article of our Constitution which provides, that the legislative, executive, and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others." *Griffin* v. *Cunningham,* 20 Gratt. 31 and 51.

In any aspect of the case, we feel constrained to hold, that the said act of February 6, 1873, so far as it attempts to except the time therein mentioned, from the period fixed by the statute of limitations, *in actions for the recovery of land,* in cases in which the statutory bar had become complete before its enactment, is unconstitutional and inoperative. The right of entry in this action, having been barred before the passage of said act, the plaintiff is not entitled to exclude from the period prescribed by the statute of limitations the time mentioned in said act, and he is, therefore, not entitled to recover the land in his declaration mentioned. The judgment of the circuit court must, consequently, be affirmed with costs to the defendant in error and thirty dollars damages.

JUDGES JOHNSON AND GREEN CONCURRED.

JUDGMENT AFFIRMED.