# WHEELING.

## Sturm *v.* Fleming *et al.*

Submitted October 27, 1883—Decided November 10, 1883.

(*Woods, Judge, Absent.)

1. In chancery pleadings it is the disposition and practice of courts of equity to regard substance rather than mere form or name, and to so mould and treat the pleadings as to attain the real justice of the case ; consequently a complaint, styled by the pleader a "petition," which has all the elements of a bill in the nature of a bill of review, will be treated as such, if it has the necessary parties with sufficient averments and prayer for relief. (p. 412.)

2. A judgment or decree, pronounced in an action at law or suit in equity instituted during the late civil war by a plaintiff resid-

*Counsel below.

ing within the Union lines, in a court within said lines, against parties residing within the Confederate lines and in the Confederate military service, without any appearance by, or notice to such parties other than an order of publication published within the Union lines, is absolutely void and may be so treated in the same or any subsequent collateral suit or proceeding. The doctrine of the cases of *Grinnan* v. *Edwards*, 21 W. Va. 247, and *Haymond, Trustee,* v. *Camden, supra,* approved. (p. 413.)

3. In such case, the suing out of an attachment against the property of such defendant, then in the military service of the Confederate States, and the service of the process on the wife of the defendant, she being within the Union lines, will not confer jurisdiction or render the proceedings valid for any purpose. (p. 414.)

4. A case in which a complaint, styled by the pleader a "petition," was held to be in substance and treated as an original bill in the nature of a bill of review, and an order of the circuit court sustaining a demurrer thereto reversed. (p. 417.)

The facts of the case are fully stated in the opinion of the Court.

*A. F. Haymond* for appellant.

*W. P. Hubbard* for appellee Fleming.

SNYDER, JUDGE:

At a circuit court held for Harrison county, on November 29, 1873, A. P. Sturm, by leave of said court, filed therein what is styled his petition, in the words following:

"The petition of Asbury P. Sturm, a citizen and resident of the State of West Virginia, filed in the circuit court of said county against Solomon S. Fleming, plaintiff, and Charles McEntire, Selden M. Ogden, John M. Fortney, administrator of Joshua Robinson, deceased, William Monroe, Emory Strickler, George W. Martin jr., Charles E. Billingsley, Van B. Ogden and Abel Bartlett, defendants, in a chancery cause lately pending on the docket of the circuit court of said county of Harrison, and John Chalfant.

"The petitioner respectfully represents that he is a citizen and resident of the State of West Virginia; that heretofore, to-wit, at November rules, 1864, one Solomon S. Fleming instituted an action of trespass against your petitioner and

one Charles McEntire in the circuit court of Harrison county, to recover damages for the taking and carrying away, as alleged, by your petitioner and others of certain goods, wares and merchandise, and an attachment was sued out in said cause and levied upon two tracts of land belonging to petitioner, one of sixty-one and the other of thirty acres, lying upon Robinson's run, in said county, and also upon the interest of Charles McEntire in the lands of Enoch McEntire, deceased, lying upon the West Fork river and Bingamon; that at the December term, 1864, of said court, the said Fleming recovered a judgment against your petitioner and the said McEntire for the sum of eight hundred and seventy-seven dollars and seventy-two cents with interest thereon from April 30, 1863, until paid, and fourteen dollars and thirty-two cents costs; that at July rules, 1864, one Selden M. Ogden instituted an action of trespass on the case in said court against petitioner, Charles McEntire and Granville McEntire, to recover damages for an alleged taking and carrying away of three head of horses, and sued out an attachment therein, and caused the same to be levied on 'one tract of land containing sixty-one acres, also one other tract of land containing thirty acres; also two acres of land, also upon the interest of Charles McEntire in the lands of Enoch McEntire's heirs, and at the September term, 1864, the said Ogden recovered a judgment against petitioner and Chas. McEntire for three hundred and ten dollars, with interest thereon from April 30, 1863, and twenty-two dollars and seventy-seven cents costs; that at August rules, 1864, one Chas. E. Billingsley instituted his action of trespass on the case against petitioner, Charles McEntire and Peter B. Righter in said court, sued out an attachment thereon, and caused the same to be levied upon thirty acres of land and sixty-one acres of land belonging to the petitioner, on Robinson's run, also upon the interest of Charles McEntire in the lands of Enoch McEntire, deceased; also upon one hundred and thirty-four acres of land belonging to Peter B. Righter, and at the September term, 1864, obtained a judgment against petitioner and Charles McEntire for twenty dollars, with interest thereon from April 29, 1864, and thirty-five dollars and eighty-nine cents costs; that John M. Fortney, administrator of Joshua Robinson, deceased, at

August rules, 1864, instituted an action of trespass against petitioner and Charles McEntire to recover damages for the alleged taking and carrying away of five head of horses, in which an attachment was sued out and levied upon sixty-one acres and thirty acres belonging to petitioner, and the interest of Charles McEntire in the lands of Enoch McEntire, deceased; and at the September term, 1864, recovered a judgment for five hundred dollars, with interest from April 30, 1863, and twenty-two dollars and eightty-one cents costs; that at August rules, 1864, one Emory Strickler instituted his action of trespass in said court against petitioner, Charles McEntire and Peter B. Righter, to recover damages for the alleged taking and carrying away of one horse, two hundred bushels of corn, and various articles of provision, and for destruction to the grain field, buggy and gearing belonging to said Strickler, in which suit an attachment was sued out and levied upon sixty-one acres and thirty acres of land belonging to said petitioner, the interest of Charles McEntire in the lands of Enoch McEntire, deceased, also upon one hundred and twenty-five acres of land belonging to Peter B. Righter; and at the September term, 1864, he recovered a judgment against petitioner and Charles McEntire for two hundred and twenty-five dollars, with interest from April 30, 1864, and nineteen dollars and twenty-four cents costs; that William Monroe, at the August rules, 1864, instituted his action of trespass in said court against petitioner and Charles McEntire, to recover damages for the alleged taking away of two head of horses, in which an attachment was sued out and levied upon sixty-one acres and thirty acres of land belonging to petitioner, and the interest of Charles McEntire in the lands of Enoch McEntire, deceased; and at the September term, 1864, recovered a judgment against petitioner and said McEntire for the sum of four hundred dollars, with interest thereon from April 30, 1863, and nineteen dollars and twenty-seven cents costs; that at the August rules, 1864, one George W. Martin, jr., instituted his action of trespass against petitioner, Charles McEntire and Peter B. Righter in said court, to recover damages for the alleged taking and carrying away of two horses, one saddle and one bridle, and in said suit sued out an attachment, and caused the same to be

levied on sixty-one acres and thirty acres of land belonging to the petitioner, and the interest of Charles McEntire in the lands of Enoch McEntire, deceased; and at the September term, 1864, recovered a judgment against petitioner and Charles McEntire for two hundred and twenty dollars, with interest from April 30, 1863, and eighteen dollars and four cents costs.' Your petitioner avers that the several attachments sued out in the said several causes, were founded upon the affidavits of said several plaintiffs of the taking and carrying away by the petitioner and said McEntire and their confederates of the goods and chattels in the several declarations in the said several causes mentioned, and upon the further allegations in said several affidavits, that the defendants were non-residents of the State; that the process in the said several causes and the attachments therein, respectively, bear the same date, that said several processes in said several causes were executed by delivering copies thereof to the wives of petitioner and said McEntire, respectively, at the usual places of abode of petitioner and said McEntire, and explaining the purport thereof to their said wives respectively, the said petitioner and McEntire not being found at their said respective places of abode.

"And your petitioner here further avers that at the time said several processes were so executed as aforesaid, he was a citizen and resident of the county of Harrison, in the State of West Virginia; that he was temporarily absent from his home within the so-called Confederate lines of the armies of the so-called Confederate States of America, and in the regular military service thereof; that he was not there and in said service by his own voluntary act, but, on the contrary, was arrested at his home in said county of Harrison by armed men and conveyed to a military prison, and by the military forces and authority of the United States, sent against his will and without his consent within the lines of the armies of the so-called Confederate States of America, where he remained until the close of the late war. And your petitioner here avers that all said property in said several causes mentioned was liable to capture, seizure and appropriation, according to the rules of civilized warfare, by belligerent forces in the prosecution of the war; and that the

said several trespasses, and the taking and carrying away of said property, alleged to have been done and committed by petitioner, for which said several judgments were rendered, were acts done according to the usage of civilized warfare in the prosecution of the war between the so-called Confederate States of America and the government of the United States.

"Your petitioner further avers that after said judgments were obtained as aforesaid, to-wit, at the February rules, 1865, the said Solomon S. Fleming instituted his suit in chancery in said court against your petitioner, Charles McEntire, Selden M. Ogden, John M. Fortney, administrator of Joshua Robinson, dec'd, William Monroe, Emory Strickler, George W. Martin, jr., Charles E. Billingsley, Van B. Ogden and Abel Bartlett, for the purpose of subjecting the lands levied upon by the said several attachments to the payment of the said several judgments, as well as to the payment of a judgment recovered by the said Van B. Ogden against Charles McEntire at the September term, 1864, of the said court, for the sum of two hundred and twenty-seven dollars and fifty cents, with interest from the 30th day of April, 1863, until paid, and $——, costs; that in said bill the plaintiff claimed that said several attachments and judgments constituted liens on said lands.

"Petitioner further shows that at the time of the institution of said chancery cause, and at the time of the pretended execution of the summons therein, he was still within the military lines of the so-called Confederate States of America; that said summons was executed as to petitioner by delivering a copy thereof to his wife at his usual place of abode; that such proceedings were had therein as that on the 17th day of March, 1865, a decree was rendered, adjudging the said several judgments to be liens on the said several tracts of land, and directing a sale thereof by Burton Despard and Edwin Maxwell, who were thereby appointed special commissioners for the purpose, unless the said petitioner and Charles McEntire should pay to the parties, respectively, whose judgments were provided for by said decree, the amounts thereof within twenty days; that by virtue of said decree, said Despard and Maxwell, commissioners as aforesaid, on the 2d day of June, 1865, sold the tract of thirty

acres of land at eight hundred and forty dollars, and the lot . of two acres and sixteen poles at four hundred and six dollars and fifty cents, both the property of petitioner, to the said John Chalfant, he being the highest bidder therefor ; that said commissioners also sold on the same day to Thomas McEntire, who became the purchaser thereof, the undivided interest of said Charles McEntire in the tract of three hundred and ninety acres and one hundred and twenty-nine and one-half acres, at the price of eight hundred and one dollars, which sale was reported to and confirmed by said court on the 12th day of June, 1865; that said Despard and Maxwell were directed by said decree to withdraw the bonds of the purchasers as they severally became due, and disburse the same as required by a former decree in said cause, and convey said land to said purchasers, respectively. And the petitioner avers that said commissioners collected the proceeds of the sale of said lands, and out of the same did fully pay the said several judgments and costs of said chancery cause.

"Your petitioner further avers that said decrees so rendered were to enforce the payment of said judgments rendered, for acts done as aforesaid, and the same should be set aside and reversed, and restitution made to the petitioner of his said property, or of the proceeds thereof, with interest thereon from the day of sale thereof.

"Petitioner further shows that said decree of the 17th of March, 1865, and the decree of the 12th day of June, 1865, should be set aside and reversed, for the following reasons also :

"First. Because the judgment of the said Solomon S. Fleming and the other judgments mentioned in said bill and decrees, were rendered upon attachments, and it did not appear, nor was it true, that either at the time of filing the said Fleming's bill, or at the time of said decree, or either of them, the said judgment-debtors had appeared or been served with copies of the attachments, or either of them, nor had the said Fleming, or either of the said judgment-creditors who were defendants in said suit, given bonds as requied by law before they could have the benefit of said judgment.

"Secondly. Because it appearing from the said bill that there was the sum of two thousand four hundred and six dol-

lars and twenty-six cents arising from the sale of the sixty-one acre tract subject to the payment of the said Fleming's and the other judgments, after the payment of a decree in favor of Bassil Lucas, Jeremiah Shinn, J. B. Denham and Waldo P. Goff, and the costs of the suit of the said Lucas, there was, without ascertaining the amounts of the said last named decree, or the residue of said sum of two thousand four hundred and six dollars and twenty-six cents, after payment of the said decrees and making application of the same, a sale of other lands ordered and made.

"Third. Because after directing the application of the residue of the two thousand four hundred and six dollars and twenty-six cents (without ascertaining what it was), and also the proceeds of the sales of the other land, to the payment of the several liens named in said bill, the decree directed the payment of the balance into court.

"Fourth. Because it is not alleged, nor is it proven, that said several judgments were unpaid, nor does it appear whether the personal property attached had been disposed of before said decree or sale.

"Your petitioner here refers to the papers of all said actions at law, and to said chancery cause, as parts of this petition. Your petitioner therefore prays that said chancery cause be re-heard, the decrees therein made, and every of them, be set aside and reversed, and that restitution of said property, or of the proceeds of sale thereof, be made to your petitioner, and grant to him such other, further and general relief as the nature of his cause requires and to equity appertains, &c. And he will ever pray, &c.

"A. P. STURM."

This petition is sworn to in due form by the said A. P. Sturm. Subsequently, on July 13, 1874, the defendants appeared in court and demurred, generally, to said petition, in which demurrer the plaintiff joined and the court, upon consideration, sustained the same and dismissed said petition with costs; and from said decree the plaintiff has appealed to this Court. The sole question presented here is, did the court err by sustaining said demurrer?

No reasons are assigned in the record for the action of the court and no counsel have appeared for the appellees in this

Court; consequently, the labor of discovering as well as considering objections to said petition is imposed upon this Court.

As a preliminary observation, it may be proper to notice that the said complaint of the plaintiff is styled a petition and not a bill. I do not deem it necessary to enter upon any extended review of the authorities to prove that the form of chancery pleadings has in England, and, perhaps, to a greater degree in this country, ceased to be of any practical importance. Such pleadings in both countries have been greatly simplified. An informal claim or complaint is substituted in many cases for a bill. And the bill, when used, is only a concise narrative or statement of the material parts of the complainant's case, with a prayer for the appropriate relief, or for general relief which will be sufficient in most cases. A rigid and technical construction of bills and other pleadings is exploded. *Mayo* v. *Marchie*, 3 Munf. 384. Many of the old forms, names and technical distinctions of bills are abolished, and all that is now required is that the material allegations should be put in issue by the pleadings so that the parties may be duly apprised of the essential enquiry and be enabled to meet it by testimony. The name and the form are immaterial. Substance is all that is required. In Virginia the practice of courts of equity, which is the rule of practice in this State, allows the greatest liberality with respect to pleadings. Sometimes a petition for a re-hearing is treated as a bill of review and *vice versa*, a notice to correct a decree on bill taken for confessed may be treated as a petition for a re-hearing. *Kendrick* v. *Whitney*, 28 Gratt. 646. A bill of review may be regarded as an original bill or a petition in the nature of an original bill. *Hill* v. *Bowyer*, 18 Gratt. 364. In *Laidley* v. *Merrifield*, 7 Leigh 346, it was declared that an application of a party is not to be rejected altogether because he has given it the form and name of a bill of review, instead of a petition or a supplemental bill in the nature of a bill of review. Judge Cabell said, the court should regard its substance, and treat it accordingly as a petition or a supplemental bill in the nature of a bill of review. In *Mettert* v. *Hagan*, 18 Gratt. 231, an answer was held sufficient for all the purposes of a cross-bill.

*Kendrick* v. *Whitney*, 28 Gratt. 654; *Sands* v. *Lynhaven*, 27 *Id.* 291.

These cases show the disposition and practice of courts of equity to regard substance rather than mere form or name, and to so mould and treat the pleadings as to attain the real justice of the case.

The petition in the case before us has all the elements of an original bill in the nature of a bill of review. It was filed by the leave of the court. It has the necessary parties, plaintiff and defendants, and assigns errors in the decrees and judgments therein mentioned and described. It also sets out the grounds upon which it is alleged that said judgments and decrees should be set aside and declared void. It sets out formally and distinctly the plaintiff's complaint and contains a special as well as a general prayer for relief. It has every element of a bill, and in all respects, except in name, it is a carefully prepared and well drawn bill in equity. I think, therefore, according to the authorities before cited and the established practice of courts of equity the said styled petition may be appropriately regarded and treated as an original bill in the nature of a bill of review claiming relief against the decrees and judgments therein mentioned and for the restitution to the plaintiff of his property therein mentioned. Considering it as such bill and admitting its allegations to be true, the enquiry raised by the demurrer of the defendants is, are the facts therein stated sufficient to entitle the plaintiff to relief?

In *Grinnan* v. *Edwards*, 21 W. Va. 247, this Court held, that a decree pronounced, during the late civil war, by the circuit court of Kanawha county, within the Union lines, in a suit instituted in said court by a party residing in said county against parties residing within the military lines of the Confederate States who never appeared nor were summoned to appear in the cause, except by order of publication which they could not lawfully see or obey, was absolutely void and must be treated as a nullity in any subsequent collateral suit.

Also, in *Haymond* v. *Camden, supra,* just decided by this Court, it was held that, "Judicial proceedings, during the late war, taken within the Union lines against defendants who were

absent in the Confederate lines, and who did not appear or
have any notice thereof, except the publication of a notice to
them in a newspaper which they could not lawfully see, are
absolutely void.    And it is immaterial in such case whether
such defendants were permanent residents of the disloyal
States or left their homes in the loyal States and went and
voluntarily remained there during the war."

In the same case it was further held that, "In an attach-
ment proceeding the jurisdiction acquired by the seizure of
the property attached is not to pass absolutely upon the rights
of the parties, but to pass upon those rights after opportunity
has been afforded its owner to appear and be heard.    To
this end the notice by publication prescribed by the statute
is indispensable.  Any decree, pronounced in such case with-
out such publication and opportunity to the defendant to ap-
pear and make defense, is not a judicial sentence and will be
deemed, *ex directo in rem* and collaterally, void."

Applying these principles to the allegations contained in
the complaint of the plaintiff in this case, assuming those
allegations to be true as we must do in considering the de-
fendant's demurrer, there can, it seems to me, be no ques-
tion as to their sufficiency.    It is alleged in said complaint
that at the several dates, at which the actions at law and suit
in equity therein mentioned were instituted in the circuit
court of Harrison county and the alleged service of the sev-
eral processes in said actions and suit on the wife of the plain-
tiff took place, the plaintiff was within the military lines of
the Confederate States and in the regular military service
thereof, and that he remained there until the close of the war.
It is, also, alleged therein that said actions at law were insti-
tuted in the year 1864, and the said suit in equity in Febru-
ary, 1865, and it is judicially known to this Court that the
late civil war therein referred to commenced in the year 1861,
and continued until after February, 1865, and that Harrison
county was during the whole of said war within the Union
lines.    These allegations of themselves, if true, are sufficient
to entitle the plaintiff to the relief prayed for in his com-
plaint.    The service of process on his wife, when the plaintiff
was absent and forbidden by international law as well as
positive acts of Congress and the proclamations of the Presi-

dent of the United States to correspond or in any manner communicate with her, was but a vain and idle form, and even if the service of such process on his wife had been communicated to him he was forbidden to appear in said court or defend said actions and suit.

But it may be supposed that, as at the time the plaintiff, appellant here, exhibited his complaint in the circuit court, more than three years having elapsed since the proceedings sought to be effected took place, it was too late to file a bill of review or an original bill in the nature of a bill of review to correct or set aside said proceedings. To this the act of the Legislature, passed April 6, 1873, is a sufficient answer. This act was passed obviously to meet and provide for just such cases as this, and excludes, as to the class of persons therein embraced, from the computation of the time within which any civil suit, proceeding or appeal shall be brought, instituted or taken, or petition filed to have proceedings re-heard, the period from the 28th day of February, 1865, to the passage of said act. If this period is excluded the lapse of time is much less than three years, and the plaintiff's right was not barred at the time he instituted his suit or proceeding unless the said act is unconstitutional or the plaintiff is not one of the class of persons embraced therein. That the said act is constitutional was decided by this Court in *Huffman* v. *Alderson*, 9 W. Va. 616. And the class of persons embraced in the act, is those persons who could not truly make the affidavit (the test oath) prescribed by section 27 of chapter 106 of the Code. It is alleged by the plaintiff that he was in the military service of the Confederate States. This is sufficient to establish that he could not truly make the prescribed affidavit and, therefore, he clearly comes within the class of persons embraced by said act. In addition to this, it is shown by the record of the suit of Fleming against the plaintiff and others, which record is referred to and made part of the plaintiff's bill in this cause—*Craig* v. *Sebrell*, 9 Gratt. 131—that in December, 1867, the appellant did move the circuit court to set aside the decrees in said suit upon notice, but the defendant in said notice, the appellee, Fleming, filed his affidavit under the act of February 28, 1865, and required the court to dismiss the appellant's said notice

unless he should make and file the affidavit, known as the "suitor's test oath," prescribed by the act of February 11, 1865, in the cause by the first day of the then next term of said court. The appellant, being unable to make and file said affidavit, in consequence thereof, the said court, on June 4, 1868, dismissed the appellant's said notice. It is true that said act requiring said "suitor's test oath," has since been declared unconstitutional and void by this Court and the Supreme Court of the United States—*Kyle* v. *Jenkins*, 6 W. Va. 371; *Cummings* v. *Missouri*, 4 Wal. 320; *Ex Parte Garland*, *Id.* 333. But at that time the courts of this State held said act constitutional and valid and said holding was, in 1870, affirmed by the Appellate Court—*Peerce* v. *Carskadon*, 4 W. Va. 234. By reason of said "test oath" and the action of the appellee, Fleming, in requiring it to be made, the appellant was obstructed in the prosecution of his right, and under the provisions of section 18 of chapter 104 of the Code, amended by section 18 of chapter 112 of the Acts of 1872-3, the time such obstruction continued must be excluded in the computation of the time prescribed by the statute of limitations—2 Kelly's Rev. Stat. 762.

There is another and independent ground upon which the allegations of the plaintiff's bill are sufficient to entitle him to relief, and this ground was not affected by the statute of limitations or lapse of time, in any view, at the time the bill was filed. The Constitution of this State—sec. 35 art. 8— declares that, no citizen of this State shall be held liable, civilly or criminally, nor shall his property be seized or sold under judgments recovered for acts done, during the late war, according to the usage of civilized warfare in the prosecution of said war by either of the parties thereto. In *Peerce* v. *Kitzmiller*, this Court declared that as this "provision of the Constitution without legislation, the mandate of the provision being explicit, of its own vigor is in full force, a court of equity under its ordinary powers has full control over the subject, on the ground that such a judgment or decree, if rendered for the acts specified in the provision, is void, just as judgments rendered through fraud, accident or mistake will, upon the showing of such facts, by a court of equity be declared void. * * * * Here is a new ground declared

to exist for setting aside of judgments or decrees, to-wit, if they were rendered for acts done according to the usages of civilized warfare in the prosecution of the war. If the fact appears, that they were so rendered, that is the end of them ; they are void, and no judgment or decree could ever be rendered in such case." 19 W. Va. 581; *White* v. *Crump, Id.* 583. The law and mode of proceeding thus declared have since been incorporated in our statute law. Acts 1883 chap. 40, sec. 4 p. 57.

The appellant alleges in his bill, or petition as he styles it, that all the property for which the alleged judgments, therein mentioned, were recovered against him, was liable to capture and appropriation by the army, and that the said several trespasses, and taking and carrying away of said property, alleged to have been committed and done by him, for which said several judgments were rendered, were acts done according to the usage of civilized warfare in the prosecution of the late civil war.

Under the decisions above cited and the equity practice in this State, it was clearly the duty of the circuit court to have overruled the defendants' demurrer, treated his petition as an original bill or as an original bill in the nature of a bill of review and required the defendants thereto to answer the same, and in default of such answer, or if, after answer, the material allegations of the bill should be established by proof or the admissions of the defendants, the relief appropriate to the case, should have been granted.

Upon either of the aspects in which I have presented the case, I am clearly of opinion that the circuit court erred in sustaining the defendants' demurrer to the plaintiff's said petition or bill, and that the decree of said court of July 13, 1874, sustaining said demurrer and dismissing said bill, must be reversed and annulled with costs to the appellant against the appellees, Solomon S. Fleming, Selden M. Ogden, John M. Fortney as administrator of Joshua Robinson, deceased, William Monroe, Emory Strickler, George W. Martin and Charles E. Billingsley.

And this Court proceeding to render such decree as the said circuit court should have rendered, it is ordered that the defendants' demurrer to the plaintiff's petition, which shall

be treated, as it is in substance, an original bill in the nature of a bill of review, be and the same is hereby overruled with leave to the defendants to answer the same.   And this cause is remanded to the said circuit court with directions to said court that it shall give to the defendants such reasonable time as it may deem proper to answer the plaintiff's bill, and upon their failure to answer, or if, upon such answer, the material facts alleged in the said bill are established by proof or the admissions of the defendants, then to set aside the decrees and declare void as to the plaintiff the judgments therein mentioned, set aside and annul the sales of the plaintiff's property made under said void judgments and decrees and restore him to the possession thereof, and otherwise proceed in this cause according to the principles announced in this opinion, and further according to the rules and practice of courts of equity.

DECREES REVERSED.   CAUSE REMANDED.

UPON A RE-HEARING.

SNYDER, JUDGE:

The preceding opinion having been announced at the September term of this Court, the appellee, Fleming, by his counsel, at the same term, filed his petition and moved the Court for a re-hearing of the cause for reasons therein stated, which motion was sustained by the Court and a re-hearing ordered.   And the cause having been again argued and submitted at this term, it is now before us for consideration upon the grounds assigned for the re-hearing.

We have carefully considered the objections, alleged by counsel, to our former opinion and find no sufficient reason for altering the conclusions therein announced.   The objections made by the appellee relate more to form than to substance.   It is claimed that the plaintiff's complaint is in form a petition for a re-hearing under the statute (sec. 3 ch. 58 Acts 1872–3); that said statute was declared void in *Peerce* v. *Kitzmiller*, 19 W. Va. 564; and that it is neither a bill of review nor a bill in the nature of a bill of review; and, con-

sequently, it is not such pleading as entitles the plaintiff to relief, nor can it form the basis for the principles and conclusions in the opinion announced by this Court.   In regard to the form of the complaint we do not deem it necessary to add anything to what has already been said. We have announced that the substance and not the form must control a court of equity in granting or denying relief. The bill in this cause we have styled an *original bill* or a bill in the nature of a bill of review.   Perhaps the more appropriate name for it would have been a supplemental bill in the nature of review.   Story's Eq. Pl. §§ 337, 338.   But the name as we have attempted to show is an immaterial matter. It was certainly not relied on in this Court as a petition under section 3 chapter 58 Acts 1872–3, and could not have been sustained as such, because said act had been declared unconstitutional and void.   Nor was the decision of this Court placed on section 35 of article 8 of our Constitution or the decision of this Court in *Peerce* v. *Kitzmiller.*   The references to this constitutional provision and decision in the opinion were merely the *dicta* of the judge who prepared the opinion and relied on by him simply as additional reasons why the relief asked should be granted.   The opinion of the Court and the conclusions reached in the cause, were based on the principles announced in *Grinnan* v. *Edwards,* 21 W. Va. 510, and *Haymond* v. *Camden, supra.*   According to these principles the judgment or decree of a court, made during the late war within the Union lines, against defendants who were then in the Confederate lines and did not appear or have any notice thereof, are absolutely void.   And in such case it is entirely immaterial whether such defendants were *voluntarily* or involuntarily within the Confederate lines.   *Haymond* v. *Camden, supra.*

It is said, however, if the judgments and decrees by which the plaintiff is deprived of his property are void, then he has no need to come into a court of equity for redress; that he has a plain remedy by action of ejectment at law to recover his lands.   Because he may, possibly have a remedy at law, it does not necessarily follow that he will not be relieved in equity.   Nor is it true that this Court will refuse to set aside a void judgment or decree.   In *Callaghan* v. *Circle,* this Court

in its opinion, says: "The decree of June 22, 1876, is not simply erroneous, *but it is absolutely void.* * * * Still even in such case, it is proper for this Court to reverse such a decree and not dismiss the appeal as an unnecessary proceeding to correct such error"—12 W. Va. 573, citing *Monroe* v. *Bartlett*, 6 W. Va. 441 and *Johnson* v. *Young*, 11 *Id.* 673. Such were also the cases of *Dean* v. *Nelson*, 10 Wall. 158 and *Lasere* v. *Rochereau*, 17 *Id.* 427.

The case of *Grinnan* v. *Edwards*, and *Haymond* v. *Camden*, *supra*, were each cases in which the sales and proceedings sought to be set aside were absolutely void and complainants out of possession, and, therefore, they might, perhaps, have recovered the lands at law by ejectment, still in each of these cases this Court held that equity had jurisdiction to set aside the sales made under such void proceedings and restore the property to the owners. In the latter case, this was done on the answer filed in the original cause which was treated as a petition in the nature of a cross-bill and relief granted as prayed therein. And in the former the complaint filed by the plaintiff was very similar in its character and averments to that in the case at bar. It is true in that case it was styled a "bill of complaint," while in this it is styled a "petition;" but in that case the plaintiffs asked that, if an original bill should not be regarded proper, their bill may be taken "as a bill of review," and that the original cause and the decrees entered therein may "be reviewed, re-heard, corrected and set aside for errors therein," &c. If we disregard the name, as we certainly may do, the averments, object and purpose of the "bill" in that case and the facts relied on are *mutatis mutandis*, scarcely distinguishable from the "petition" in this case.

It is true, the complaint in this case does not in terms declare the judgments and decrees complained of void, and ask that they be set aside for that reason, but it avers facts which, if true, necessarily make said judgments and decrees void and prays that by reason of these facts the said judgments and decrees may be set aside and the property restored to the plaintiff. It is the province of pleading to state facts and not conclusions of law. Pleadings which state simply conclusions of law and not facts are uniformly held bad, but no

court has ever declared pleadings bad which contained a sufficient averment of facts merely because they did not also state the legal conclusions resulting from the facts so stated. It is the province of the court and not the pleader to deduce the conclusions from, and declare the legal effect of, the facts averred in the pleadings. An examination of the complaint in this case will show, that the necessary conclusion from the facts averred therein is, that the judgments and decrees sought to be set aside, were rendered without jurisdiction and are, consequently, void.

But it is contended that the act of February 6, 1873, under the provisions of which this suit is sought to be exempted from the bar of the statute of limitations, so far as it operates retrospectively, is unconstitutional and void. In *Hall* v. *Webb*, 21 W. Va. 318, this Court held, that said act, in so far as it attempts, in actions for the recovery of land, *to revive* such action in cases where the right to recover was *completely barred at the time the act was passed,* was unconstitutional and void. But it has never been held that it was void in cases where the right to recover had not become barred at the time the act was passed. In such cases the tile never vested, and the effect of the act was not to revive but merely to postpone the bar and continue the remedy. The power of the Legislature to postpone the statutory bar in cases not barred at the time has never been questioned either as to actions on torts or contracts. *Huffman* v. *Alderson*, 9 W. Va. 616.

The appellee, John Chalfant, who made the pretended purchase of the lands of the appellant, never obtained possession thereof until, in the year 1865, and the statutory bar to the recovery of lands was at that time ten years, the aforesaid statute was passed in February, 1873, within less than ten years from the time said Chalfant obtained possession of the lands sought to be restored in this cause; consequently, the statutory bar had not become complete so as to transfer the title at the date said act was passed. As to this cause, then, there can be no question as to the constitutionality of said act.

It is, however, further claimed that the appellant did not file in the cause the affidavit provided for by said act. This affidavit is simply evidence. This cause was determined on

demurrer and the facts alleged were confessed by the demurrer. The appellant averred that he was in the military service of the Confederate States and so continued until the close of the war. This was admitted by the demurrer and there was no occasion or opportunity to produce evidence of the facts alleged until there was an issue by the denial of the facts. When this is done it will be the proper time for the appellant to file the affidavit provided for in said act, or other sufficient proof, if he has any, of the truth of his allegations. Evidence to sustain the allegations of a bill or other pleading is never required on the hearing of a demurrer.

We have carefully considered the grounds relied on in the brief of counsel for the appellee, Fleming, and thus briefly stated our views on those which we deemed it our duty to notice specially, but after a full and mature consideration of the whole record we see no reasons for altering the conclusions announced in the preceding opinion. It is, therefore, ordered that the decree heretofore directed be now entered in this cause.